T.C. Memo. 1998-463

UNITED STATES TAX COURT

EARL L. MILLER AND NANCY B. MILLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25828-96.               Filed December 30, 1998.

<u>James W. Childs</u>, for petitioners.

<u>Anita A. Gill</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years 1993 and 1994.

Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' 1993 and 1994 Federal income taxes in the amounts of $4,788 and $3,423, respectively. The issue for decision is whether Nancy B. Miller's writing activity constituted a trade or business during the years in issue.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners are husband and wife. They filed timely joint Federal income tax returns for the years in issue. At the time the petition was filed, petitioners resided in Akron, Ohio. References to petitioner are to Nancy B. Miller.

Petitioner suffers from a condition known as Arnold-Chiari, a neurological disorder which causes fatigue, lack of muscle coordination, and blurred vision. She has been treated for these symptoms, all of which are aggravated during times of stress, since the 1970's. She was diagnosed with this affliction in 1989 and underwent brain surgery for the condition in 1994. She has been receiving Social Security disability benefits as a result of this illness since the early 1980's.

After graduating from the University of South Florida with a bachelor's degree in psychology, petitioner was employed for several years as a secretary and office manager for a travel

agency in Miami. In 1989, she began working as a columnist for the West Side Leader. In February 1993, she decided to become a freelance writer, and since then all of her writing has been conducted on that basis. Petitioner's articles focus primarily on recreational travel and related subjects.

Petitioner joined Midwest Travel Writers Association and the Outdoor Writers of America Association in 1990 and 1994, respectively. To become eligible for membership in Outdoor Writers of America Association, an individual must have at least 40 published articles. She is also a member of the Outdoor Writers of Ohio. These organizations provide various benefits to their members, including networking opportunities and press passes that allow the holder access to certain events for free or at a reduced cost.

At the time of trial, petitioner had written numerous articles and had been published in approximately three dozen publications. Petitioner was compensated for her writing on a per article basis, the details of which are set forth in appendix I.

Petitioner and her husband purchased a travel trailer in 1989 for $13,881. They purchased a class C motor home (the RV) in 1994 for $34,537. During the years in issue, petitioners traveled on numerous occasions as set forth in appendix II. Some of the trips involved either the travel trailer or the RV.

When traveling, petitioner or her husband normally take photographs.  She owns various pieces of 35mm single lens reflex camera equipment that she uses in connection with her writing activity.  She does not carry all of her photographic equipment on all of her trips.

Petitioner has amassed an inventory of 9,000 slides which she intends to market at some future point in time.  Occasionally, petitioner includes individual slides or photographs with articles submitted for publication.  Some publishers pay a higher fee for articles that include photographs.

During 1993, petitioners attended the Second Annual Seminar at Sea (the cruise) from July 31 to August 13.  The cruise was held aboard the Royal Princess, Princess Cruise Line's flagship.  The ship departed from Southampton, England, sailed to ports in Scandinavia and Russia, then returned to England.  As part of the cruise, petitioners took ancillary land tours to St. Petersburg, Moscow, and Copenhagen.  Following the cruise, petitioners remained in England for two additional days, touring London and Bath.

The cruise was advertised as an educational seminar hosted by travel writing and photography experts Carl and Ann Purcell.  Mrs. Purcell was unable to attend, and was replaced by Bill Pekela, General Manager of Technical and Professional Services

for the Photographic Division of Nikon. Petitioners met with Mr. Purcell and Mr. Pekela informally at least twice a day to discuss style and technique. Over the 2-week course of the cruise, there was a total of 5 1/2 hours of formal instructions. During the ancillary land tours, petitioners took approximately 900 photographs.

In a document prepared by petitioner and submitted to respondent prior to the issuance of the notice of deficiency, petitioner indicated that the purpose for the cruise "was to study and apply [petitioners'] knowledge [in] obtaining excellent photographic shots for future photography stock of European ports." Petitioner originally considered the cruise to be educational. However, she was not satisfied with the extent of formal instructions given during the cruise and subsequently decided that the cruise was more for research purposes than educational purposes. The total cost of the cruise, including meals, airfare, and ancillary land tours, was $12,067.75. Petitioner had published one article related to the cruise, for which she was paid $150.

Petitioner maintains detailed records of her expenditures, the amounts of which are undisputed by respondent. She maintains a separate log book and a separate bank account for her writing activity. She pays for a majority of the expenses related to her writing activity via credit card, the bills from which are usually paid from petitioners' personal joint checking account.

During 1993, petitioner did not reimburse her personal account with funds from her writing activity account.  Petitioners consulted with an accountant in structuring their records and in categorizing various expenses for Federal income tax purposes.

Petitioner's father died in 1993.  Petitioner and her sister were the sole beneficiaries of their father's estate, which was worth about $1.5 million.

The following items of income were reported on petitioners' Federal income tax returns for the years in issue:

|  | 1993 | 1994 |
|---|---|---|
| Wages | $57,466.00 | $50,032.38 |
| Interest income | 37,185.93 | 45,998.54 |
| (incl. tax-exempt int.) | | |
| Dividend income | 14,748.32 | 6,516.50 |
| Capital gain (loss) | 17,307.15 | (3,000.00) |
| Social Security benefits | 6,187.20 | 6,349.20 |

Petitioners began treating her writing activity as a trade or business in 1990.  The income and expenses attributable to that activity from that year on were reported on a Schedule C. As of the date of trial, petitioner's writing activity had not resulted in a profit for any year, as reflected in the following table:

| Year | Net Loss |
|---|---|
| 1990 | $6,463.28 |
| 1991 | 7,732.60 |
| 1992 | 7,822.23 |
| 1993 | 17,064.66 |
| 1994 | 13,823.70 |
| 1995 | 11,047.00 |
| Total | 63,953.47 |

For the years in issue, the income and expenses incurred in connection with petitioner's writing activity were reported on Schedules C as follows:

|  | 1993 | 1994 |
|---|---|---|
| Gross receipts | $1,130.31 | $2,510.35 |
| Expenses: |  |  |
| Advertising | --- | 52.06 |
| Car & truck | 1,731.52 | 1,854.61 |
| Depreciation | 3,405.87 | 6,172.33 |
| Legal & prof. | 130.00 | 30.00 |
| Office expense | 2,267.65 | 301.58 |
| Supplies | 641.03 | 1,335.66 |
| Travel | 8,213.54 | 2,348.36 |
| Meals | 1,177.49 | 1,907.64 |
| Other | 863.37 | 3,285.63 |
| Net loss | 17,064.66 | 13,823.70 |

Petitioners deducted 80 percent of the expenses (including depreciation) attributable to the operation of their travel trailer in 1993 and 75 percent of the expenses (including depreciation) attributable to the operation of their RV in 1994. Approximately one-half of the expenses attributable to the cruise were deducted in 1993.

Petitioner characterized certain travel expenditures as business related depending upon whether she had spoken with any editors regarding her destination, whether any interviews were scheduled or conducted during the trip, and the amount of equipment she took along in her camera bag. Petitioner sometimes made the decision upon returning from the trip.

In the notice of deficiency sent to petitioners on October 7, 1996, for each year in issue respondent disallowed the net losses reported on the Schedules C attributable to petitioner's writing activity because "it has not been established that * * * [petitioner's writing activity] was a business entered into for profit."  Because petitioners' 1994 Federal income tax liability was increased as a result of the disallowance, respondent increased the foreign tax credit claimed on petitioners' 1994 Federal income tax return.  In an amendment to answer, respondent further alleged that the deduction attributable to the cruise should be disallowed pursuant to section 274(h)(2).

OPINION

In general, section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  The term "trade or business" is not precisely defined in the Internal Revenue Code or the regulations promulgated thereunder; however, it is well established that in order for an activity to be considered a taxpayer's trade or business for purposes of section 162, the activity must be conducted "with continuity and regularity" and "the taxpayer's primary purpose for engaging in the activity must be for income or profit."  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).

We are satisfied that petitioner's writing activity was conducted with continuity and regularity during the years in issue. Nevertheless, in order for an activity to be considered a trade or business within the meaning of section 162, a taxpayer must conduct the activity with the requisite profit motive or intent. See Commissioner v. Groetzinger, supra.

Consistent with the manner in which petitioners reported the income and expenses attributable to petitioner's writing activity on their Federal income tax returns for the years in issue, they argue that petitioner engaged in her writing activity with the intent to make a profit, and therefore the activity constitutes a trade or business.

Respondent argues that petitioner's writing activity does not constitute a trade or business because she did not engage in that activity with the requisite intent to profit. Consequently, according to respondent, petitioners are only entitled to deduct the expenses related to petitioner's writing activity as allowable under section 183.

The test of whether a taxpayer conducted an activity for profit is whether he or she entered into, or continued, the activity with an actual or honest objective of making a profit. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.

Although a reasonable expectation of profit on taxpayer's part is not required, the profit objective must be bona fide, as determined from a consideration of the surrounding facts and circumstances. Keanini v. Commissioner, supra at 46; Dreicer v. Commissioner, supra at 645; Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967).

Whether petitioner engaged in her writing activity with an actual and honest objective of realizing a profit must be redetermined year-to-year, taking into account all of the relevant facts and circumstances. Golanty v. Commissioner, supra at 426; sec. 1.183-2(a) and (b), Income Tax Regs. More weight is given to objective facts than to petitioner's statement of her intent. Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); sec. 1.183-2(a), Income Tax Regs.

The following factors, which are nonexclusive, should be considered in the determination of whether an activity is engaged in for profit: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his or her advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities;

(6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs.

No one factor is determinative in and of itself, and our conclusion with respect to petitioner's profit motive does not depend upon merely counting up those factors that suggest the presence of a profit motive and comparing the number to those factors that indicate the opposite. Sec. 1.183-2(b), Income Tax Regs.

Taking into account the above factors and considering the facts and circumstances relating to petitioner's writing activity, as discussed more fully below, we are not persuaded that during the years in issue petitioner engaged in that activity with the intent to profit that is necessary to consider the writing activity a trade or business for purposes of section 162. The activity did generate income; however, not all income producing activities constitute trades or businesses within the meaning of section 162(a). Cf. Commissioner v. Groetzinger, supra at 35.

In each year in issue, the great majority of expense deductions attributable to petitioner's writing activity were related to travel. We are particularly influenced by

petitioner's failure to consider whether the income that could be generated by a particular trip would be in excess of the expenses related to the trip. In fact, the income-producing potential of a particular trip seemed to be of little concern to petitioner. It appears that petitioner would first decide upon a destination and spend whatever was necessary to travel there, regardless of the amount of income that she could objectively expect to earn from the sale of articles resulting from the trip. This is obvious during the years in issue from the relatively small amount of income that petitioner received on a per-article basis. For example, in 1993 and 1994, petitioner traveled to Las Vegas, deducting expenses of $907.52 and $934.96, respectively. Even though she sold three articles that resulted from the trips, she recovered less than one-third of the expenses deducted. Similar circumstances occurred regarding petitioner's travels to Miami, Milwaukee, and Disney World. With few exceptions, petitioner did not sell an article that generated more income than the expenses attributable to the related trip.

Furthermore, the decision to deduct the expenses of a particular trip was sometimes made after the fact. For example, petitioners took a trip to Disney World in 1994, for which they incurred expenses of $977.51. Although petitioner had not planned on writing any articles about Disney World or contacted any editors prior to the trip, upon returning home she decided

that the expenses of the trip should be deducted in connection with her writing activity because she had taken photos and interviewed various people.

Petitioners enjoyed traveling and did so frequently. The recreational aspects of their travel are apparent given many of their destinations. The personal or recreational aspects of an activity cannot be ignored in considering a taxpayer's profit motive. Sec. 1.183-2(b)(9), Income Tax Regs. The fact that the taxpayer enjoys his or her work does not necessarily indicate the absence of an intent to profit; however, "where the possibility for profit is small (given all the other factors) and the possibility for gratification is substantial, it is clear that the latter possibility constitutes the primary motivation for the activity." Smith v. Commissioner, T.C. Memo. 1997-503 (citing Burger v. Commissioner, T.C. Memo. 1985-523). Weighing the personal pleasures derived from petitioner's travels against the profit potential that could result, we are satisfied that the writing activity was conducted more for the purpose of subsidizing the costs of the trips than for profit.

Our conclusion on the point is further supported by the history of losses incurred by petitioner since her writing activity began. See sec. 1.183-2(b)(6), Income Tax Regs. "[W]here losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable

status such continued losses, if not explainable, * * * may be indicative that the activity is not being engaged in for profit." Sec. 1.183-2(b)(6), Income Tax Regs. During the years in issue, petitioners deducted $30,888.36 of losses attributable to petitioner's writing activity. The magnitude of the activity's losses in comparison with its revenues is an indication that petitioner did not have a profit motive with respect to the activity. Smith v. Commissioner, supra; Burger v. Commissioner, supra.

Petitioners contend that the losses are startup losses. We recognize that losses in the early years of a business are not necessarily inconsistent with a profit motive. However, the taxpayer must demonstrate that enough profits will be earned in the future to cover the losses in the startup years. Golanty v. Commissioner, 72 T.C. at 426-427. Petitioners deducted losses totaling $63,953 over the first 6-year period of the activity. As of the date of trial, with few exceptions, petitioner had not earned enough from an article to cover the cost of the related trip. We are not convinced that petitioner will ultimately be able to recover losses from prior years.

Because petitioner's writing activity was not an activity engaged in for profit, the activity cannot be considered a trade or business for purposes of section 162(a). Therefore, she is only entitled to deduct the expenses incurred in that activity in

accordance with section 183.  It follows, and we hold, that respondent's determination in this regard is sustained.  In view of the foregoing, we need not consider whether the provisions of section 274(h) prohibit petitioners from deducting the expenses related to the cruise.

In closing we note that our conclusion in this case is limited to the years before us.  Sec. 1.183-2(a) and (b), Income Tax Regs.  We also note that petitioner considers herself a professional writer and is rightfully proud of her various publication credits.  To the extent that petitioner is paid for the articles accepted for publication, her characterization of herself as a professional writer is appropriate, and nothing in this opinion should be interpreted as suggesting otherwise.  Our focus upon petitioner's writing activity as a trade or business has been in the context of Federal income taxation and should be so limited.

Based on the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.

Appendix I

| Article[1] | Publisher | Date | Income |
|---|---|---|---|
| WAKC - Kill Fee | --- | 4/93 | $125.00 |
| Cruise Ships Take | Akron Beacon | 1/93 | 125.00 |
| Travelers Find | Camping Today | 3/93 | 125.00 |
| Ohio's Field | Camping Today | 11/93 | 75.00 |
| Planning Your Natl. | Focus | 3/93 | 136.00 |
| Biking Basics | Focus | 3/93 | 136.00 |
| Experience Ohio | Focus | 6/93 | 136.00 |
| Exercise Classes | Focus | 12/93 | 64.50 |
| Skiing Offers | Focus | 12/93 | 64.50 |
| Cruises are Travel | Focus | 12/93 | 37.50 |
| Fascination | Leader | 1/93 | 20.00 |
| Double Your Pleas. | Leader | 1/93 | 20.00 |
| Anchors Aweigh | Leader | 1/93 | 20.00 |
| Learn to Ski | Leader | 1/93 | 20.00 |
| Metro Park Rpt. | Leader | 1/93 | 20.00 |
| Chilli Open | Leader | 1/93 | 20.00 |
| Cruises are for | Leader | 2/93 | 20.00 |
| Metro Park Rpt. | Leader | 2/93 | 20.00 |
| Fairlawn Parks | Leader | 3/93 | 20.00 |
| Discover Ohio's | Leader | 6/93 | 20.00 |
| RV Show Packed | Leader | 12/93 | 20.00 |
| Campers Must | Ohio O-O-D | 4/93 | 25.00 |
| The 5Ws of Car | Ohio O-O-D | 4/93 | 25.00 |
| Kids Can Be | Ohio O-O-D | 4/93 | 25.00 |
| Gifts for Outdoor | Ohio O-O-D | 9/93 | 25.00 |
| Hints for Buying | Ohio O-O-D | 11/93 | 25.00 |
| Winter Camping | Ohio O-O-D | 12/93 | 25.00 |
| Sleeping Bags | Ohio O-O-D | 12/93 | 25.00 |

---

[1] Titles were taken from Exhibit 13-M.

| Article | Publisher | Date | Income |
|---------|-----------|------|--------|
| Derby City - Brim | Akron Beacon | 2/94 | $150.00 |
| Roman Around | Akron Beacon | 4/94 | 150.00 |
| Las Vegas Seeks | Akron Beacon | 8/94 | 150.00 |
| Miami is a Jungle | Akron Beacon | 8/94 | 150.00 |
| Survival Hints | Camping Today | 2/94 | 100.00 |
| Increasing Power | Camping Today | 2/94 | 75.00 |
| Camping Word | Falcon | 2/94 | 100.00 |
| Hitting the Trail | Focus | 1/94 | 67.50 |
| Seniors Enjoy | Focus | 4/94 | 61.50 |
| Malabar Farm | Focus | 5/94 | 61.50 |
| MetroParks Accom. | Focus | 7/94 | 67.50 |
| Lake FarmPark | Focus | 8/94 | 67.50 |
| Metro Seeks Levy | Focus | 10/94 | 86.75 |
| Summit Co. Metro | Focus | 10/94 | 86.75 |
| RVs What's Hot | Ohio O-O-D | 1/94 | 25.00 |
| UV or Not UV | Ohio O-O-D | 4/94 | 25.00 |
| Malabar Farm | Ohio O-O-D | 5/94 | 25.00 |
| Rent-A-Camp | Ohio O-O-D | 5/94 | 25.00 |
| Quality Hunting | Ohio O-O-D | 7/94 | 25.00 |
| Christmas Gifts | Ohio O-O-D | 10/94 | 25.00 |
| Snowshoes | Ohio O-O-D | 12/94 | 25.00 |
| Snowshoes | Ohio O-O-D | 12/94 | 35.00 |
| Press Kit | Simon Sign | 6/94 | 350.00 |
| First Aid Kits | Winnebago | 1/94 | 50.00 |
| Binoculars | Winnebago | 3/94 | 100.00 |
| Natl. Tour | Winnebago | 5/94 | [2]150.00 |
| Akron: Much More | Woodall's | 3/94 | 89.20 |
| Chadwick Inn | Woodall's | 5/94 | 59.25 |
| Lake FarmPark | Woodall's | 7/94 | 66.30 |
| Museum of Family | Woodall's | 11/94 | 41.95 |
| Petit Center | Woodall's | 12/94 | 37.85 |
| Milwaukee: Great | Woodall's | 12/94 | 111.25 |

---

[2] Plus $11 for an attached photo.

Appendix II

1993 - TRIPS FOR WHICH DEDUCTIONS WERE NOT CLAIMED ON A SCHEDULE C

| Date | Destination | Deduction |
|------|-------------|-----------|
| 5/15-19 | Sag Harbor, New York | n/a |
| 6/18-20 | Utica, New York | n/a |
| 7/1-4 | Miami, Florida | n/a |

1993 - TRIPS FOR WHICH DEDUCTIONS WERE CLAIMED ON A SCHEDULE C

| Date | Destination | Deduction |
|------|-------------|-----------|
| 1/26-2/4 | Miami | $297.77 |
| 4/17-25 | Las Vegas | 907.52 |
| 5/21-23 | Mt. Gilead | 48.52 |
| 5/29-31 | PierLon Campground | 61.25 |
| 6/5-7/11 | Portland, Oregon (OWAA) | 747.31 |
| 7/8-18 | NCHA Campvention | 446.68 |
| 7/30-8/15 | "Cruise" | 6,088.10 |
| 9/17-19 | Mansfield | 79.84 |
| 10/1-3 | Springfield | 43.34 |
| 10/8-10 | Louisville, Ohio | 63.09 |
| 10/16-17 | Punderson State Park | 27.12 |
| 11/29-12/5 | Louisville (RVIA Trade Show) | 701.65 |

1994 - TRIPS FOR WHICH DEDUCTIONS WERE NOT CLAIMED ON A SCHEDULE C

| Date | Destination | Deduction |
|------|-------------|-----------|
| 2/12-16 | Cedar Rapids, Iowa | n/a |
| 3/25-27 | New Jersey | n/a |
| 5/27-30 | Baylor Beach, Brewster | n/a |
| 6/17-19 | Loudonville | n/a |
| 8/17-27 | Suffern, New York | n/a |
| 9/16-18 | Medina, Ohio; PierLon Camp. | n/a |
| 10/1 | Put-in-Bay, Ohio | n/a |
| 11/24-27 | Utica, New York | n/a |

1994 - TRIPS FOR WHICH DEDUCTIONS WERE CLAIMED ON A SCHEDULE C

| Date | Destination | Deduction |
|------|-------------|-----------|
| 3/4-16 | Miami | $315.95 |
| 3/18-25 | Las Vegas | 953.77 |
| 4/15-17 | Loudonville | 185.00 |
| 5/7-15 | Orlando | 977.51 |
| 5/20-22 | Toledo; Maumee | 100.65 |
| 6/26-27 | Blue Rock, Ohio | 67.46 |
| 7/2-4 | Montville, Ohio | 79.82 |
| 7/23-8/10 | Boston, Mass. | 682.81 |
| 11/13-23 | Milwaukee | 170.61 |
| 11/28-12/2 | Louisville (RVIA Trade Show) | 314.24 |
| 12/2-22 | Milwaukee | 329.25 |