T.C. Summary Opinion 2006-24


UNITED STATES TAX COURT


JAMES CASTAGNETTA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22132-03S.            Filed February 13, 2006.


James Castagnetta, pro se.

<u>Frank J. Jackson</u>, for respondent.


CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code in effect for the year in issue.  Rule references
are to the Tax Court Rules of Practice and Procedure.  The

decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency of $863 in petitioner's 2001 Federal income tax.[1]  The issue for decision is whether petitioner's gambling activity constituted a trade or business during the taxable year in issue.

Background

Some of the facts have been stipulated and are so found. Petitioner was not married and had no children during, or as of the close of, the year in issue.  At the time the petition was filed in this case, petitioner resided in Mt. Kisco, New York.

Petitioner is a college graduate with a bachelor's degree in economics.  He lives with a roommate in a rented condominium and describes his lifestyle as "modest".

During 2001, petitioner was employed, part time, as a truck driver delivering produce to area restaurants.  Typically, he worked on Monday, Tuesday, and Friday, 5 a.m. to noon.  He was not paid for holidays or vacations and his 2001 wages from his part-time employment totaled $17,785.

Petitioner became interested in horseracing at an early age. One of his relatives introduced him to handicapping horseraces. He has been handicapping horseraces in some capacity for more

---

[1]  The amount in the notice of deficiency was incorrectly computed to be $683.  The parties stipulate that the correct calculation of the proposed deficiency is $863.

than 25 years.  Petitioner has been "seriously" handicapping horseraces for approximately 11 years.

Petitioner bets on horseraces via a closed circuit simulcast at Yonkers Raceway (Yonkers).  From Wednesday through Sunday, Yonkers simulcasts horseraces from several alternating race tracks.  Typically, petitioner spends approximately 40 hours per week handicapping and betting on horseraces.  During 2001, petitioner spent more than 250 days handicapping races and betting at Yonkers.

Petitioner keeps a detailed account of his daily gambling transactions.  This includes his daily wagers and winnings, as well as a cumulative total of his yearly winnings and losses. He also spends a considerable amount of time handicapping races and studying racing programs and other materials.  As part of handicapping horseraces, petitioner prepares his own "speed figures".[2]  Using a number of criteria, including track length, track conditions, and weather conditions, as well as his observations during the races, petitioner determines a final "speed figure" for the winning horse in each race and compares the "speed figure" to other horses.  Petitioner maintains a detailed chronological record of his "speed figures" for the winner of each horserace.

---

[2]  "Speed figures" can also be purchased from a third party.

Prior to 2001, petitioner maintained handwritten tables for the "speed figures" he prepared. During 2001, petitioner began using a commercially available computer spreadsheet program to maintain and prepare the tables for his "speed figures". Generally, petitioner makes hand-recorded notes during the race and then later enters the information into the spreadsheet program. In addition to maintaining detailed "speed figures", petitioner keeps copies of racing forms, racing programs, and betting tickets as part of his record keeping. He does not maintain a separate checking account with respect to his gambling activity.

Petitioner does not advertise that he handicaps horseraces, nor does he sell the "speed figures" he prepares. He does, however, offer advice to, and solicit advice from, other regular gamblers. Petitioner also watches videotapes of the races so he can "closely" review each race.

Petitioner does not use any wages from his job as a truck driver to finance his gambling activity. Instead, his wagers are a fixed percentage of his "bankroll". Petitioner's "bankroll" consists solely of his cumulative winnings at the race track. Generally, petitioner bets 2.5 percent of his "bankroll" on each race. During 2001, petitioner earned a 4-percent return on each dollar bet he placed; i.e., petitioner won on average of $1.04

for each dollar bet he placed.  According to petitioner, Yonkers typically pays back about 83 cents for each dollar bet placed.

Petitioner's 2001 Federal income tax return was timely filed.  The taxable income and income tax liability shown on that return take into account the standard deduction applicable to petitioner's filing status.  Included with that return is a Schedule C, Profit or Loss From Business, which lists his principal business activity as "Parimutuel Wagering".

On the Schedule C, petitioner reported the following amounts:

| | |
|---|---|
| Gross receipts from wagers | $52,501 |
| Total wagered | 50,725 |
| Gross Income | 1,776 |
| Total expenses | (1,542) |
| Net Profit | 234 |

Petitioner's total expenses consisted of supplies of $162 and forms and programs of $1,380.[3]

In the notice of deficiency respondent determined that petitioner's gambling activity did not constitute a trade or business during 2001.  The gambling income reported on the Schedule C was recharacterized as "other income", and the wagering losses were allowed as a miscellaneous itemized deduction in lieu of the standard deduction.

---

[3]  Respondent does not contest that petitioner incurred these gambling-related expenses.

Discussion

The issue in this case is whether petitioner's gambling activity constituted a trade or business for purposes of section 162 during 2001. If petitioner were engaged in a trade or business of gambling, wagering losses, to the extent deductible under section 165(d),[4] would be deducted in computing adjusted gross income. See sec. 62. On the other hand, if petitioner were not in a trade or business of gambling, wagering losses, to the extent deductible under section 165(d), would be deductible as an itemized deduction in the computation of taxable income.

---

[4] In general, sec. 165(a) allows a taxpayer to deduct "any loss sustained during the taxable year and not compensated for by insurance or otherwise." Losses from wagering transactions, however, are "allowed only to the extent of the gains from such transactions." Sec. 165(d); sec. 1.165-10, Income Tax Regs. We construed the phrase "losses from wagering transactions" to include not only losing wagers but also for other expenses incurred in connection with gambling transactions. See Estate of Todisco v. Commissioner, 757 F.2d 1 (1st Cir. 1985), affg. T.C. Memo. 1983-247; Offutt v. Commissioner, 16 T.C. 1214 (1951); see also Praytor v. Commissioner, T.C. Memo. 2000-282 (citing Kochevar v. Commissioner, T.C. Memo. 1995-607 (holding that slot-machine players, even if construed to be in the trade or business of gambling, could deduct gambling losses and expenses, including automatic teller charges, office supplies, travel mileage, and meals, only to the extent of the their winnings)); Valenti v. Commissioner, T.C. Memo. 1994-483 (holding that a deduction for losses incurred in wagering transactions is subject to sec. 165(d) regardless of the fact that the taxpayer was in the trade or business of gambling); Kozma v. Commissioner, T.C. Memo. 1986-177 (construing the phrase "losses from wagering transactions" as used in sec. 165(d) to include expenses incurred by a professional gambler for transportation, meals, lodging, admission fees, and office supplies).

See Gajewski v. Commissioner, 84 T.C. 980, 982 (1985); Johnston v. Commissioner, 25 T.C. 106, 108 (1955).

Consistent with the manner in which petitioner reported the income and expenses attributable to his gambling activity on his Federal income tax return for the year in issue, petitioner claims that his gambling activity constitutes a trade or business. Respondent argues, in part, that petitioner's gambling activity does not constitute a trade or business because he did not engage in that activity with the requisite intent to profit.

In general, section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. The term "trade or business" is not precisely defined in the Internal Revenue Code or the regulations promulgated thereunder; however, it is well established that in order for an activity to be considered a taxpayer's trade or business for purposes of section 162, the activity must be conducted "with continuity and regularity" and "the taxpayer's primary purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). It is clear that in a single taxable year, a taxpayer may be in engaged in more than one trade or business. Curphey v. Commissioner, 73 T.C. 766 (1980); Barrish v. Commissioner, T.C. Memo. 1984-602.

We are satisfied that petitioner's gambling activity was conducted with the requisite continuity and regularity during the taxable year to allow for treatment as a trade or business within the meaning of section 162(a). Nevertheless, in order for an activity to be considered a trade or business within the meaning of that section, a taxpayer's primary purpose fo engaging in the activity must be for income or profit. See Commissioner v. Groetzinger, supra; Miller v. Commissioner, T.C. Memo. 1998-463, affd. 208 F.3d 214 (6th Cir. 2000). Furthermore, as was the situation in Groetzinger, the activity in question must be the taxpayer's "intended livelihood source". Commissioner v. Groetzinger, supra at 33.

The test of whether a taxpayer conducted an activity for profit is whether he or she entered into, or continued, the activity with an actual or honest objective of making a profit. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. Although a reasonable expectation of profit on a taxpayer's part is not required, the profit objective must be bona fide, as determined from a consideration of the surrounding facts and circumstances. Keanini v. Commissioner, supra; Dreicer v. Commissioner, supra at 645; Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979), affd. without published opinion 647 F.2d 170 (9th

Cir. 1981); Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967).

Whether petitioner engaged in his gambling activity with an actual and honest objective of realizing a profit must be redetermined year-to-year, taking into account all of the relevant facts and circumstances. Golanty v. Commissioner, supra at 426; sec. 1.183-2(a) and (b), Income Tax Regs. More weight is given to objective facts than to petitioner's statement of his intent. Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); sec. 1.183-2(a), Income Tax Regs.

The following factors, which are nonexclusive, should be considered in the determination of whether an activity is engaged in for profit: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his or her advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs.

No one factor is determinative in and of itself, and our conclusion with respect to petitioner's profit objective does not depend upon merely counting up those factors that suggest the presence of a profit motive and comparing the number to those factors that indicate the opposite. Sec. 1.183-2(b), Income Tax Regs. These factors are nonexclusive, and not every factor is relevant in every case. Vandeyacht v. Commissioner, T.C. Memo. 1994-148; Borsody v. Commissioner, T.C. Memo. 1993-534, affd. per curiam 92 F.3d 1176 (4th Cir. 1996); sec. 1.183-2(b), Income Tax Regs.

Turning to the relevant factors enumerated in section 1.183-2(b), Income Tax Regs., we find that petitioner's gambling activity was operated in a businesslike manner. Petitioner regularly attended the horseraces at Yonkers. In addition to keeping copies of betting slips and racing forms and programs, petitioner kept detailed records with respect to his gambling activity. Petitioner kept a detailed account of his daily wagers, as well as a cumulative total of his yearly winnings and losses. Petitioner also maintained numerous statistics for each horserace in the form of "speed figures" and used this information for handicapping horseraces. Petitioner reviewed videotapes of the horseraces for further study. During the taxable year in issue, petitioner also began to use a computer to maintain a significant amount of his records with respect to his

gambling activity.  Although petitioner maintained only a single bank account, his gambling winnings and losses were accounted for separately.  Accordingly, this factor favors petitioner.

A profit objective might be indicated where the taxpayer carries on an activity in accordance with practices learned from extensive study of accepted business and economic practices, or consultation with experts involved therein.  Sec. 1.183-2(b)(3), Income Tax Regs.  Petitioner has been gambling on horseraces for more than 25 years.  Petitioner has been "seriously" handicapping horseraces for 11 years.  This includes preparing detailed "speed figures" for the winner of each race.  Petitioner sought advice from, as well as provided advice to, other individuals who gambled on a regular basis.  Finally, through the years petitioner has read numerous books published on gambling and handicapping horseraces.  This factor favors petitioner.

A profit objective might be indicated where the taxpayer uses much of his personal time and effort to carry on the activity.  Sec. 1.183-2(b)(4), Income Tax Regs.  Petitioner spends about 40 hours pursuing his gambling activity.  During 2001, he spent approximately 250 days gambling and handicapping horseraces.  Petitioner's detailed records, including the self-prepared "speed figures", are evidence of the time and effort expended by petitioner away from the race track.  We are convinced that petitioner spent a significant amount of time

and effort in pursuit of this activity.  This factor favors petitioner.

A profit objective is strongly indicated where the taxpayer has experienced a series of profitable years.  Sec. 1.183-2(b)(6), Income Tax Regs.  Detailed financial information about petitioner's other taxable years is not available on this record.  An opportunity to earn a substantial ultimate profit in a highly speculative venture is ordinarily sufficient to indicate that the activity is engaged in for profit even though losses or only occasional small profits are actually generated.  Sec. 1.183-2(b)(7), Income Tax Regs.  Although it was modest in amount, petitioner enjoyed a profit from gambling during the year in issue.  This factor is neutral or slightly favors petitioner.

The next factor significant in our inquiry is the financial status of the taxpayer.  A profit objective might be indicated where the taxpayer does not have substantial income from sources other than the activity.  Sec. 1.183-2(b)(8), Income Tax Regs. Petitioner held no substantial investments during 2001, and his part-time employment as a delivery truck driver was his only other source of income.  Under the circumstances, the amount of his wages gives little insight into his profit objective.  On balance, we consider this factor to be neutral.

A lack of profit objective might be indicated where there are personal motives for carrying on the activity, especially

where the motive is personal pleasure or recreation. Sec. 1.183-2(b)(9), Income Tax Regs. Profit need not be the only objective, however, and personal motives may coexist with an actual and honest intent to derive a profit. A taxpayer's enjoyment of an activity does not necessarily indicate that the taxpayer lacks a profit objective if the activity is conducted for profit as shown by other factors. See Jackson v. Commissioner, 59 T.C. 312, 317 (1972); sec. 1.183-2(b)(9), Income Tax Regs. The fact that petitioner may have also enjoyed betting on horseraces does not mean that he did not engage in the activity for profit. This factor is neutral.

Taking into account the above factors and considering the facts and circumstances relating to petitioner's gambling activity, we conclude that petitioner engaged in his gambling activity with the bona fide intent of making a profit. Having found that petitioner conducted his gambling activity with continuity and regularity, we conclude that petitioner was in the trade or business of gambling during the taxable year in issue. Accordingly, petitioner's gambling expenses are deductible under section 162(a), to the extent limited by section 165(d).

The parties are cautioned, however, that our holding in this case does no more than resolve the year here in issue. See sec. 1.183-2(a) and (b), Income Tax Regs. Petitioner's betting strategy (2.5 percent of his "bankroll") raises some question

whether his gambling activity was his "intended livelihood source", <u>Commissioner v. Groetzinger</u>, 480 U.S. at 33, as his bankroll was described as "cumulative winnings" with no mention about withdrawals for "livelihood" expenditures.  Maintaining a "bankroll" used exclusively for gambling purposes strongly suggests that his gambling activity does not constitute a trade or business.  To the extent that petitioner's betting strategy remains consistent over the years, a different result might well be reached.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.