T.C. Memo. 2011-293

UNITED STATES TAX COURT

WAYNE LASIER WILMOT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18296-08.              Filed December 22, 2011.

Wayne Lasier Wilmot, pro se.

<u>James C. O'Leary</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  Respondent (the IRS) issued a notice of
deficiency to petitioner, Wayne Lasier Wilmot (Wilmot),
determining an income-tax deficiency of $14,666 for the year
2004.  The IRS reduced the deficiency to $14,303 after correcting
a computational error in the notice.  Wilmot timely filed a

petition under section 6213(a) for redetermination of the deficiency.[1]  We have jurisdiction under section 6214.

The primary issue for decision is whether Wilmot's photography activity was an "activity not engaged in for profit" within the meaning of section 183.  We find that Wilmot did not engage in his photography activity for profit.  Thus he cannot deduct any of the photography expenses he reported.[2]

### FINDINGS OF FACT

Some facts have been stipulated, and they are so found. Wilmot resided in Maryland when he filed the petition.

Wilmot earned a B.S. in electrical engineering in 1964 and a Ph.D. in oceanography in 1972.  From 1972 to 1984, he conducted oceanographic research at various universities, institutes, and government agencies; he also taught graduate-level courses.  This work took place in Scandinavia--primarily in Sweden.

---

[1]All section references are to the Internal Revenue Code as in effect for the year in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The notice of deficiency reflected that the disallowed photography deductions increased Wilmot's income, thus resulting in computational adjustments to his tuition and fees deduction and his miscellaneous itemized deductions.  Wilmot argues that his tuition and fees expenses were genuine expenses.  But he misunderstands the IRS's adjustment.  Though he may have incurred tuition and fees expenses, his modified adjusted gross income (as increased by the notice of deficiency) exceeds the threshold for the tuition and fees deduction.

In 1984, Wilmot returned to the United States and started Wilmot & Associates, an oceanographic-consulting business.  By his account, the business was relatively successful.

In 1985, Wilmot began working full time for the National Oceanic and Atmospheric Association (NOAA) as an oceanographer. He also continued his oceanographic-consulting business, Wilmot & Associates.  By the 1990s, however, Wilmot & Associates was dormant.

In 1992, while still working for NOAA, Wilmot earned an M.S. from Johns Hopkins University.  The degree was in "Technical Management:  Project Management and Systems Engineering".

In 1992, after earning his M.S., Wilmot began teaching part time at Johns Hopkins while continuing to work at NOAA.[3]

In 2001, Wilmot began taking photography classes at Montgomery College in Rockville, Maryland.  His coursework included color photography, black-and-white photography, electronic photography, portrait and fashion photography, and business practices and portfolio development.

Around 2001, Wilmot became interested in starting a photography business.  He hoped to pursue advertising, commercial photography, and environmental photography.[4]

---

[3]Wilmot generally taught two courses per year--one in the spring and one in the fall.

[4]Environmental photography (in Wilmot's parlance) consists
(continued...)

In 2002, while working full time for NOAA and part time for Johns Hopkins, Wilmot began engaging in a photography activity that he characterized as a for-profit business.  On his tax returns, he began reporting the expenses from this activity under the name Wilmot Environmental Technology.  He used the same name to report expenses from oceanographic consulting, an activity he resumed in 2002.  For the two years that Wilmot conducted both photography and oceanographic consulting (2002 and 2003), it is unclear how much of the expenses he reported for Wilmot Environmental Technology were oceanographic-consulting expenses.

In 2004 (the year in issue), Wilmot stopped working as an oceanographic consultant.  He continued to engage in photography and remained a full-time employee of NOAA and a part-time employee of Johns Hopkins.  His combined wages in 2004 from NOAA and Johns Hopkins totaled $119,127.36.

In 2004, Wilmot made three trips to Europe to take photos. He used these trips to build a portfolio--a set of sample photos that photographers use to seek work.  The first trip took place from December 17, 2003 to January 21, 2004, the second trip from March 9 to 22, 2004, and the third trip from July 1 to August 11, 2004.  On the first and second trips, Wilmot took photos

_____

[4](...continued)
of taking staged photos of people in their work environments.
These photos are then used in promotional brochures or
advertising.

exclusively in the Czech Republic.  On the third trip, he again took photos in the Czech Republic, but also brought one model, Hana Strangfeldova, to Sweden for seaside photos.

During portions of each trip, Wilmot staged multiple all-day photo shoots.  The shoots consisted of photographing models in fashionable clothing and swimwear.  In the Czech Republic, the shoots took place at local photo studios and at various other locations.  Pavel Danel, a Czech photographer and studio owner, coordinated the logistics for many of the shoots:  he lent Wilmot his studio; he provided equipment; and he hired models, makeup artists, and photo assistants.[5]  In Sweden, Wilmot and Strangfeldova stayed at a summer home owned by the family of Wilmot's former domestic partner.  Wilmot took seaside photos of Strangfeldova on the surrounding land and islands.

After the photo shoots, Wilmot either processed the photos himself or sent them to a professional lab for processing.  He then used the photos to compile a portfolio.[6]

In 2006, Wilmot earned an associate of applied science degree in photography from Montgomery College.  He continued

---

[5]Wilmot paid Danel for studio and equipment rental.  Danel also set the fees for the models, makeup artists, and photo assistants (whom Wilmot paid directly) and received a 25-percent commission on their earnings.

[6]Wilmot's portfolio is not in evidence.  Nor are any of his photos.

engaging in his photography activity until at least 2007.[7]  He continued teaching part time at Johns Hopkins until 2009, and he continued working for NOAA until he retired in 2010.

On his 2004 tax return, Wilmot claimed $57,691.60 of photography expenses on Schedule C, Profit or Loss From Business:[8]

| Expense | Amount Claimed |
| --- | --- |
| Car and truck | $185.00 |
| Legal and professional services | 12,836.26 |
| Office | 11,048.74 |
| Repairs and maintenance | 247.31 |
| Supplies | 10,204.33 |
| Travel | 20,949.86 |
| Meals and entertainment | 1,495.95 |
| Utilities | 724.15 |
| Total | 57,691.60 |

-----

[7]The manner in which Wilmot conducted his photography activity underwent little change in the years after 2004.  As discussed infra pt. III.A., the only change Wilmot made was a shift from film to digital photography.

[8]The Schedule C stated that Wilmot's principal business was "consulting & photography", but as Wilmot testified, the activity reported on his 2004 Schedule C consisted solely of photography; thus all his Schedule C expenses in 2004 were photography expenses.

Wilmot reported no gross receipts from his photography activity. He thus claimed a $57,691.60 Schedule C loss, which reduced his gross income by $57,691.60.

At trial, Wilmot submitted into evidence two binders of documents to substantiate his photography expenses (binder documents). The documents include receipts, invoices, ticket stubs, bank statements, credit card statements, and utility bills. They indicate payments for: books, meals, travel, lodging, entertainment, women's clothing, women's swimwear, makeup supplies, utilities, photo equipment, storage equipment, digital equipment, postal services, photographic services, and miscellaneous items.

To prepare his 2004 tax return, Wilmot created handwritten workpapers based in part on the binder documents. The handwritten workpapers are not in evidence. The amounts on Wilmot's Schedule C (see table above) did not correspond to the amounts on the binder documents. One reason was that he lacked receipts for some expenses and thus relied on his personal knowledge of those expenses. Another reason was that he sometimes used the U.S. Department of State per diem rates instead of his actual expenses.

During audit, Wilmot created Excel spreadsheets that detail how he calculated his expenses when preparing his 2004 tax return. The Excel spreadsheets are electronic versions of the

handwritten workpapers that Wilmot used to prepare his 2004 tax return. The spreadsheets divide his photography expenses into categories (the same categories used on his 2004 tax return) and list the date, payee, amount, and purpose of each expense. Although we excluded the spreadsheets as hearsay, the parties agreed to treat the spreadsheets as if Wilmot had testified to the information contained in them. We thus ordered that the spreadsheets be treated as if their information was reflected in Wilmot's sworn testimony.

OPINION

I.   The Parties' Positions

Wilmot contends that he engaged in his photography activity for profit and is thus entitled to deduct his photography expenses as business expenses under section 162. He argues that the profit-motive factors in section 1.183-2(b), Income Tax Regs., show that he had a profit motive. Citing the same factors, the IRS argues that Wilmot did not engage in his photography activity for profit.

The IRS also argues that even if Wilmot intended to earn a profit from photography, his photography expenses should be amortized as startup expenses because he was not actively engaged in a photography activity in 2004. See secs. 195(a), (b), (c)(1), 162(a); Jackson v. Commissioner, 86 T.C. 492, 514 (1986) (no deduction under section 162 unless ongoing business), affd.

864 F.2d 1521 (10th Cir. 1989). We need not address this argument because, as we explain, we find that Wilmot did not conduct his photography activity for profit; thus he could not amortize his expenses as section 195 startup expenses. See sec. 195(b)(1), (c)(1)(A) (amortization allowed only for expenses incurred to create new trade or business); Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987) (profit motive required to have trade or business).

Wilmot contends that he gave the IRS full substantiation of his photography expenses during audit and that the IRS failed to conduct a "proper audit" of his 2004 tax return. He requests that we order the IRS to conduct a complete audit. But even if the audit was incomplete, the proper remedy is for us to determine Wilmot's correct tax liability. See, e.g., Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327-328 (1974).

Wilmot also argues that when the IRS audited his 2006 tax return, it agreed that he had conducted his photography activity for profit. But this is irrelevant. The IRS's failure to propose adjustments to one year does not estop it from proposing adjustments to another year. See, e.g., Rose v. Commissioner, 55 T.C. 28, 31-32 (1970).

II. Burden of Proof

In the notice of deficiency, the IRS determined only that Wilmot failed to substantiate his photography expenses. The IRS

raised the issue of profit motive before trial, and the parties agreed to try this issue even though it was not raised in the notice of deficiency or the answer. Because the issue was not raised in the notice of deficiency, the IRS has the burden of showing, by a preponderance of the evidence, that Wilmot did not engage in his photography activity for profit. See Shea v. Commissioner, 112 T.C. 183, 190-197 (1999) (placing burden of proof on IRS for new matter tried by consent of parties under Rule 41(b)); Estate of Gilford v. Commissioner, 88 T.C. 38, 51 (1987) (party satisfies burden of proof by demonstrating merits of claim by preponderance of evidence).

III. Whether Wilmot Engaged in His Photography Activity for Profit

Under section 183(a),[9] no deduction is allowed for an "activity * * * not engaged in for profit", except as provided in section 183(b).[10] Section 183(c) defines an "activity not engaged in for profit" as any activity other than one for which

---

[9]Sec. 183 applies only to individuals and S corporations. Sec. 183(a).

[10]Sec. 183(b) provides two exceptions, neither of which applies to Wilmot. Sec. 183(b)(1) allows certain types of deductions that do not require a profit motive. Sec. 183(b)(2) allows deductions that would otherwise require a profit motive, but only to the extent that gross income from the activity exceeds the total deductions under sec. 183(b)(1). All of Wilmot's photography-expense deductions are the type that require a profit motive, see secs. 162 and 183(c), and he earned no gross income from his photography activity. Thus he does not qualify for deductions under sec. 183(b).

deductions are allowable under section 162 or 212(1) or (2). Expenses are deductible under section 162 (the section Wilmot claims is applicable) only if the taxpayer is engaged in a trade or business. In other words, the taxpayer must engage in the activity continuously and regularly, and the taxpayer's primary purpose must be profit. Commissioner v. Groetzinger, supra at 35 (defining "trade or business").

Courts determine whether an activity is engaged in for profit by examining the facts and circumstances. Sec. 1.183-2(a), Income Tax Regs.; see also Hendricks v. Commissioner, 32 F.3d 94, 97-98 (4th Cir. 1994), affg. T.C. Memo. 1993-396. The taxpayer must have a good faith profit motive, but need not have a reasonable expectation of profit. Sec. 1.183-2(a), Income Tax Regs.; see also Hendricks v. Commissioner, supra at 97-98; Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). In determining profit motive, "greater weight is given to objective facts than to the taxpayer's mere statement of his intent." Sec. 1.183-2(a), Income Tax Regs.; see also Hendricks v. Commissioner, supra at 98.

Section 1.183-2(b), Income Tax Regs., provides nine factors that courts typically consider in determining whether an activity is engaged in for profit: (1) "Manner in which the taxpayer carries on the activity"; (2) "The expertise of the taxpayer or

his advisors"; (3) "The time and effort expended by the taxpayer in carrying on the activity"; (4) "Expectation that assets used in activity may appreciate in value"; (5) "The success of the taxpayer in carrying on other similar or dissimilar activities"; (6) "The taxpayer's history of income or losses with respect to the activity"; (7) "The amount of occasional profits, if any, which are earned"; (8) "The financial status of the taxpayer"; and (9) "Elements of personal pleasure or recreation".[11]  See, e.g., Hendricks v. Commissioner, supra at 98.

A.    Manner in Which the Taxpayer Carries On the Activity

The following facts can indicate a profit motive:  (1) the taxpayer conducts the activity "in a businesslike manner and maintains complete and accurate books and records", (2) the taxpayer conducts the activity "in a manner substantially similar" to profitable activities of the same nature, and (3) the taxpayer attempts to improve the activity's profitability by changes in operating methods.  Sec. 1.183-2(b)(1), Income Tax Regs.; Engdahl v. Commissioner, 72 T.C. 659, 666-667 (1979).

Wilmot did not conduct his photography activity in a businesslike manner.  He lacked a separate bank account for the

---

[11]These factors are not exclusive, and no one factor is dispositive.  Sec. 1.183-2(b), Income Tax Regs.; Hendricks v. Commissioner, 32 F.3d 94, 98 (4th Cir. 1994).

activity and a written business plan.[12]  See Keating v.
Commissioner, 544 F.3d 900, 905 (8th Cir. 2008), affg. T.C. Memo.
2007-309.  Although he kept detailed records of his expenses, it
seems he did so solely to substantiate tax deductions.  See id.
(records do not indicate profit motive when kept only to
"memorialize for tax purposes the existence of the subject
transactions"); Bush v. Commissioner, T.C. Memo. 2002-33 (records
do not indicate profit motive if "maintained primarily to support
tax deductions"), affd. without published opinion 51 Fed. Appx.
422 (4th Cir. 2002).  There is no evidence that Wilmot used his
records to make business decisions or improve operations.  See
Golanty v. Commissioner, 72 T.C. 411, 430 (1979), affd. without
published opinion 647 F.2d 170 (9th Cir. 1981).

Wilmot's meager efforts at promotion and advertising fall
far short of what the owner of a profitable business would have
done.  See Keating v. Commissioner, supra at 905 (paltry
advertising efforts can indicate lack of profit motive).  Wilmot
relied on word of mouth to promote his activity even though he
had few contacts and no established reputation in the photography
industry.  He claimed that he had contacted several potential

---

[12]Wilmot's "unwritten business plan" was supposedly to build
up his photography activity to provide additional retirement
income.  Wilmot also claims that he chose his photo-shoot
locations to lower costs, but there is no written evidence of
cost comparisons.  His two binders of documents merely show that
he incurred certain expenses at the locations he chose.

clients in 2004, but we find that he contacted only three potential clients; and of these, only one was a realistic prospect.[13] He even turned down work that he thought undesirable: he declined to work on photography jobs with another Montgomery College student who did personal portraits and wedding photography. We are skeptical that a fledgling for-profit photographer would have behaved this way.

Wilmot did not make significant efforts to improve profitability. Only belatedly did he shift from film to digital photography. Even this transition--which ended several years after 2004--was unlikely to materially improve profitability. See Golanty v. Commissioner, supra at 431 (operational changes not meaningful when they cannot significantly improve profitability). For clients who preferred digital photography, Wilmot was still an unknown photographer because he did not advertise.

For the above reasons, the manner in which Wilmot conducted his photography activity does not indicate a profit motive.

---

[13]Wilmot could only name three contacts. He interviewed with an office-workspace company in Rockville, Maryland, but did not get the job. He also sent unsolicited mailings to Nordstrom and H&M (two large clothing companies) offering his services. But we do not believe these mailings created realistic work opportunities.

B.    The Expertise of the Taxpayer or His Advisors

Preparation for an activity "by extensive study of its accepted business, economic, and scientific practices" or by consultation with experts in these practices may indicate a profit motive where the taxpayer conducts the activity "in accordance with such practices".  Sec. 1.183-2(b)(2), Income Tax Regs.

This factor is neutral.  Wilmot's coursework at Montgomery College gave him extensive knowledge of photographic techniques. But he lacked adequate knowledge of the business aspects of photography.  See Golanty v. Commissioner, supra at 432 (expertise should include knowledge of business aspects of activity); Giles v. Commissioner, T.C. Memo. 2005-28 (same).  He testified that his courses at Montgomery College taught him the business aspects of photography, but only one of these courses covered business practices.  He also claimed that he had received advice from professional photographers.  But he received only general advice on which fields to pursue from a photography professor at Montgomery College.  And he did not receive business advice from the other photographers with whom he worked; he simply paid them for services and studio space.  Even if Wilmot did glean business knowledge from his courses or from other photographers, we doubt whether he applied it given his

lackluster efforts at cost cutting and promotion.  See <u>supra</u> part
III.A.

      C.    <u>The Time and Effort Expended by the Taxpayer in
Carrying On the Activity</u>

If the taxpayer devotes "much of his personal time and
effort" to conducting an activity, this may indicate a profit
motive, particularly if the activity lacks "substantial personal
or recreational aspects".  Sec. 1.183-2(b)(3), Income Tax Regs.

This factor is neutral.  Wilmot spent a significant amount
of time on his photography activity.[14]  The time spent, however,
included substantial personal and recreational aspects, see <u>infra</u>
part III.I., which severely detract from the significance of the
time commitment, see sec. 1.183-2(b)(3), Income Tax Regs.; <u>Giles
v. Commissioner</u>, T.C. Memo. 2006-15.  Wilmot also would have done
many tasks, like taking photos and purchasing equipment,
regardless of whether photography was a hobby or a business.  See
<u>Giles v. Commissioner</u>, T.C. Memo. 2006-15.

      D.    <u>Expectation That Assets Used in Activity May Appreciate
in Value</u>

A profit motive may exist if the taxpayer expects that
assets used in the activity will appreciate in value, such that

---

[14]Wilmot estimates that he spent 1,520 hours on his
photography activity in 2004, or about 30 hours a week.  The IRS
argues that this estimate is implausible.  We disagree.  As
Wilmot testified, a combination of his annual leave, his
holidays, his flexible work schedule at NOAA, and the seasonal
nature of his work at Johns Hopkins allowed him to devote time to
photography.

even if current income is insufficient to realize a profit, the activity will generate an overall profit when the assets are sold. Sec. 1.183-2(b)(4), Income Tax Regs.

This factor favors the IRS. Wilmot testified that his photos were assets that could appreciate in value and earn him royalty-like income when leased to stock photography companies, but we do not find this testimony credible.[15] Wilmot admitted that he did not seriously pursue stock photography. There is also no evidence that Wilmot's photos would appreciate in value. He never earned any income from his photography activity, and we have no samples of his work and no credible market-value estimates; thus we have no way of gauging any potential appreciation. See Hendricks v. Commissioner, 32 F.3d at 100 (mere expectation of asset appreciation, without probative foundation, is insufficient to support profit motive).

E.    The Success of the Taxpayer in Carrying On Other Similar or Dissimilar Activities

If the taxpayer has profitably conducted similar activities, this may indicate a profit motive. Sec. 1.183-2(b)(5), Income Tax Regs. This factor favors the IRS. Although Wilmot successfully ran an oceanographic-consulting business, the skills he developed were not readily transferable to a photography

---

[15]Stock photography companies acquire photos and let clients use the photos for a fee. The companies then remit a portion of this fee to the photographer.

activity.  See, e.g., <u>Giles v. Commissioner</u>, T.C. Memo. 2005-28 (success in dental practice had no bearing on ability to conduct horse activity).

F.   <u>The Taxpayer's History of Income or Losses With Respect to the Activity</u>

If the taxpayer sustains losses beyond the customary startup period for the activity, this may indicate a lack of profit motive.  Sec. 1.183-2(b)(6), Income Tax Regs.  Losses during the startup stage or losses that are explainable "as due to customary business risks or reverses", however, might not indicate a lack of profit motive.  <u>Id.</u>  Losses due to circumstances outside the taxpayer's control, such as natural disasters or depressed market conditions, do not indicate a lack of profit motive.  <u>Id.</u>

This factor favors the IRS.  Wilmot's photography losses generally worsened over the years.  See <u>Golanty v. Commissioner</u>, 72 T.C. at 427.  As reflected in his Schedules C, Wilmot lost $29,674.63 in 2002, $37,665.79 in 2003, $57,691.60 in 2004 (the year in issue), $73,066.68 in 2005, $70,971.64 in 2006, and $69,937.86 in 2007--a 6-year total of $339,008.20 of losses.[16]

Wilmot claims that his history of losses is not so severe. First, he argues that we should not consider losses from 2002 and 2003 because those years precede the year in issue, 2004.  This

---

[16]It is possible that the 2002 and 2003 figures reflect some losses from Wilmot's consulting activity.  But we find that most of Wilmot's Schedule C losses for 2002 and 2003 were photography losses.

argument is invalid.  Section 1.183-2(b)(6), Income Tax Regs., directs us to examine the "history" of losses, which includes losses from prior years.  Second, Wilmot argues that we should not examine years after 2004 (i.e., 2005, 2006, and 2007).  We need not decide whether these post-2004 years are outside our frame of reference.  Even without these years, we conclude that Wilmot's history of losses suggests he lacked a profit motive.  Three straight years of losses (2002, 2003, and 2004) is sufficient because the magnitude of the losses far outstrips the revenue.  See Smith v. Commissioner, T.C. Memo. 1997-503, affd. without published opinion 182 F.3d 927 (9th Cir. 1999); see also Miller v. Commissioner, T.C. Memo. 1998-463, affd. without published opinion 208 F.3d 214 (6th Cir. 2000).  Wilmot earned no gross receipts, and this poor performance was caused by his method of operation, not by the newness of his "business".

G.  The Amount of Occasional Profits, If Any, Which Are Earned

The earning of substantial profits, even if the profits are sporadic, generally indicates a profit motive if the taxpayer's investment or losses are relatively small.  Sec. 1.183-2(b)(7), Income Tax Regs.  The mere opportunity to earn a substantial profit may also indicate a profit motive.  Id.  In contrast, an occasional small profit generally indicates a lack of profit motive if the taxpayer's investment or losses are relatively large.  Id.

This factor favors the IRS. Wilmot earned no income from his photography activity and never made a profit. See Wesley v. Commissioner, T.C. Memo. 2007-78 (analogous situation). He claims that he persisted in his photography activity because he hoped to make a profit, but objectively, he had little hope of the activity ever becoming profitable given his lack of clients, advertising, reputation, business records, and flexibility regarding type of work. See Giles v. Commissioner, T.C. Memo. 2005-28 (hope of speculative profit must be supported by record).

H.    The Financial Status of the Taxpayer

If the taxpayer lacks substantial income from sources other than the activity, this may indicate a profit motive. Sec. 1.183-2(b)(8), Income Tax Regs. If, on the other hand, the taxpayer has substantial income from other sources--particularly if the losses from the activity generate substantial tax benefits--this may indicate a lack of profit motive, especially if the activity involves personal or recreational elements. Id.

This factor favors the IRS. Wilmot earned $119,127.36 in 2004 from his work at NOAA and at Johns Hopkins. He claimed $57,691.60 of photography losses, which reduced his gross income by $57,691.60. His photography activity also involved personal and recreational elements, as explained below. See infra part III.I.

I.   Elements of Personal Pleasure or Recreation

The "presence of personal motives" in conducting an activity may indicate a lack of profit motive, especially if the activity involves personal or recreational elements.  Sec. 1.183-2(b)(9), Income Tax Regs.  Making a profit, however, need not be the taxpayer's sole objective.  Id.  An activity is not classified as a hobby simply because the taxpayer finds it pleasurable. Jackson v. Commissioner, 59 T.C. 312, 317 (1972).

This factor favors the IRS.  It is true, as Wilmot suggests, that he did not visit family during his three trips to Europe. But this fact does not convince us that his photography activity lacked personal and recreational elements.  First, we believe that photography had a significant recreational aspect for Wilmot.  Second, it is difficult to conceive why, if Wilmot did not enjoy photography, he would continue the activity given its complete lack of revenue.  See, e.g., Miller v. Commissioner, supra.  Third, many of Wilmot's activities involved foreign travel, dining, and entertainment.[17]

J.   Conclusion

Wilmot did not engage in his photography activity for profit.  He earned no income from the activity and incurred

---

[17]Of the $57,691.60 of photography expenses, $20,949.86 was for travel, and $1,495.95 was for meals and entertainment. Wilmot's receipts indicate that his photography expenses included a trip to Gröna Lunds Tivoli, a Swedish amusement park, and the purchase of a Harry Potter DVD in the Czech Republic.

increasing losses that he was unlikely to recoup. He did not conduct the activity in a businesslike manner or in a manner similar to a profitable business. He did not keep records that helped him make business decisions, nor did he significantly attempt to improve profitability. He had no genuine expectation that his photos would appreciate in value. His previous success in oceanography did not increase his odds of success in photography. And lastly, he used photography losses to offset income from other sources and derived substantial pleasure from traveling and taking photos. His expertise in photographic techniques and his large time expenditure are insufficient to outweigh these factors. Because we find that Wilmot did not conduct his photography activity for profit, he cannot deduct any of his photography expenses under section 162 or section 183. For this reason, we need not determine whether Wilmot substantiated his expenses.

We have considered all arguments, and contentions not addressed are meritless, irrelevant, or moot.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.