T.C. Memo. 2007-57

UNITED STATES TAX COURT


JOSE CALVAO, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7287-05.                    Filed March 8, 2007.


Timothy J. Burke, for petitioner.

Luanne S. Di Mauro, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, Judge:  Respondent determined a deficiency in petitioner's 2002 Federal income tax of $17,096 and an accuracy-related penalty under section 6662(a) of $3,419.[1]  The issues for

_____

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended.  All amounts are rounded to the nearest dollar.

decision are whether petitioner was in the trade or business of gambling during 2002, and whether petitioner is liable for an accuracy-related penalty under section 6662(a).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time he filed his petition, petitioner resided in Tiverton, Rhode Island.

Prior to 1993, petitioner was an operations manager for a textile firm called Prim/Dritz Corporation. In 1993, petitioner started Caltex Corporation (Caltex), an S corporation. Caltex is a textile firm which sells embroidered T-shirts, caps, and other similar products.

Sometime before 1999, Caltex hired petitioner's brother with the goal that, once petitioner's brother learned about the textile business, petitioner could reduce his involvement in Caltex. In 1999, petitioner's brother took over the day-to-day operations of Caltex.

During 2002, petitioner was the president and 100-percent owner of Caltex and worked at Caltex 20 to 25 hours per week providing "consulting services". In 2002, petitioner received a salary of $42,000 and a distribution of income of $99,790 from Caltex.

During 2002, petitioner played the slot machines at several casinos throughout the United States.[2] Petitioner spent most of his time at Foxwoods Resort and Casino in Connecticut, which was approximately 100 miles from his home. The casinos issued petitioner Forms W-2G, Certain Gambling Winnings, for 2002, reflecting gross winnings of $132,800. Prior to filing his 2002 Federal income tax return, petitioner prepared a summary of his gambling activity (the gambling summary). The gambling summary reflected that petitioner gambled on 24 separate occasions, won a total of $132,800, and lost a total of $180,300.

Petitioner timely filed his 2002 Federal income tax return.[3] Petitioner reported the following sources of income: (1) Wage income from Caltex of $42,000; (2) taxable interest of $7,676; (3) ordinary dividends of $3,176; (4) taxable State income tax refund of $3,224; and (5) income from rental real estate, S corporations, and trusts of $109,403.[4] On an attached Schedule C, Profit or Loss From Business, petitioner reported that his

---

[2] Petitioner occasionally played Carribean stud poker, but the slot machine was his preferred game.

[3] Petitioner's return was prepared by Norman R. Beauregard (Mr. Beauregard), who identified himself on the return as a certified public accountant. There is nothing else in the record regarding Mr. Beauregard's experience or qualifications.

[4] The income from rental real estate, S corporations, and trusts included a total rental real estate loss of $6,047, a passthrough of income from Caltex of $99,790, and trust income of $15,660.

principal business or profession was professional gambling. Petitioner reported gross receipts of $132,800, cost of goods sold of $180,300, and deducted $3,150 in travel expenses, for a net Schedule C loss of $50,650. After deducting the Schedule C loss and a net operating loss carryover of $1,106, petitioner reported total income of $113,723. Petitioner claimed itemized deductions of $14,077 and a personal exemption of $3,000, resulting in taxable income of $96,646 and total tax of $23,303.

On March 21, 2005, respondent issued petitioner a notice of deficiency. Respondent determined petitioner was not engaged in the trade or business of gambling during 2002 and therefore could not deduct his gambling losses on Schedule C. Instead, respondent determined petitioner could deduct the gambling losses as an itemized deduction, but only to the extent of his gambling winnings.[5] Based on the above, respondent determined the amount of tax required to be shown on petitioner's 2002 return was $40,399, resulting in a deficiency of $17,096. Respondent also determined petitioner was liable for an accuracy-related penalty under section 6662(a) of $3,419.

In response to the notice of deficiency, petitioner filed his petition with this Court on April 18, 2005.

---

[5] Respondent also disallowed the claimed personal exemption deduction because petitioner's adjusted gross income exceeded the allowable amount for such a deduction. Petitioner does not dispute this determination.

OPINION

## I.   Petitioner's Gambling Activity

Respondent determined petitioner was not in the trade or business of gambling during 2002 and thus could not claim his gambling losses as a Schedule C deduction.  Petitioner argues he was in the trade or business of gambling because he pursued the activity full time, in good faith, with regularity, and for the production of income.[6]

Section 162(a) allows deductions for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  If a taxpayer were engaged in the trade or business of gambling, losses would be deductible from gross income in arriving at the adjusted gross income.  See sec. 62.  However, if the taxpayer were not in the trade or business of gambling, his losses would be deductible as an itemized deduction in arriving at taxable income.  See sec. 63(a).  Regardless of whether the gambling activity constituted a trade or business, section 165(d) provides:  "Losses from wagering transactions shall be allowed only to the extent of the

---

[6]  The resolution of this issue does not impact the amount of the allowable gambling loss deduction.  See sec. 165(d). However, the resolution of this issue does impact the amount of the deficiency.  If the gambling loss deduction were shifted from Schedule C to Schedule A, Itemized Deductions, it would increase petitioner's adjusted gross income, thus limiting under sec. 68 the extent to which itemized deductions other than the gambling loss are allowable.

gains from such transactions." See also sec. 1.165-10, Income Tax Regs. Although petitioner deducted gambling losses exceeding his gambling winnings by $50,650, petitioner does not dispute that section 165(d) limits his gambling loss deduction to the amount of his gambling winnings.

To be engaged in a trade or business within the meaning of section 162(a), an individual taxpayer must be involved in the activity with continuity, regularity, and with the primary purpose of deriving income and profit. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). Whether the taxpayer is carrying on a trade or business requires an examination of all the facts in each case. Id. at 36; Higgins v. Commissioner, 312 U.S. 212, 217 (1941).

In Groetzinger, the Supreme Court addressed the issue of whether a taxpayer's gambling activity was a trade or business within the meaning of section 162(a). The taxpayer devoted 60 to 80 hours each week for 48 weeks to parimutuel wagering, primarily on greyhound races. Commissioner v. Groetzinger, supra at 24. The taxpayer gambled at racetracks 6 days a week and spent a substantial amount of time studying racing forms, programs, and other materials. Id. While the taxpayer received $6,498 in income from other sources during the year, the taxpayer had no other profession or type of employment during the 48 weeks he devoted to gambling. Id. at 24-25. The Supreme Court stated:

to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify. * * *

* * * * * * *

we conclude that if one's gambling activity is pursued full time, in good faith, and with regularity, to the production of income for a livelihood, and is not a mere hobby, it is a trade or business within the meaning of the statutes with which we are here concerned. * * *

Id. at 35-36. The Supreme Court affirmed the judgment of the Court of Appeals for the Seventh Circuit, finding the taxpayer was engaged in the trade or business of gambling. Id. at 36.

Petitioner argues the facts of Groetzinger are similar to the facts of this case, and, like the Supreme Court in Groetzinger, we should find petitioner was engaged in the trade or business of gambling. After carefully considering the facts in this case, we disagree.

Petitioner argues, like the taxpayer in Groetzinger, he spent a substantial amount of time preparing for his trips to the casino and developed a strategy for his gambling:

In 2002, the petitioner went to the casino with a plan. The petitioner would first talk to the casino hosts to find out which areas of the casino were heavily played and what slot machines were/were not hitting. Based upon the information, the petitioner then determined what slot machines he was going to play and how much money he would need.

In 2002, the petitioner set a limit for his losses each day that he went to the casino. The petitioner also

set a limit on his games/winnings such that he left the casino once he made a twenty (20%) percent return on his money.

Petitioner also argues that he bought a slot machine, spent a significant amount of time studying how the "chips" and cycles of slot machines worked, subscribed to a gambling magazine, and read "probably about 20" books on playing the slot machines.

Petitioner's efforts and strategy are consistent with the desire to win money playing the slot machines. However, we find petitioner's desire to win money and his strategy for doing so is also consistent with gambling purely for its entertainment or recreational aspects. The time petitioner spent and the strategy he developed, by themselves, do not establish petitioner was engaged in the trade or business of gambling.

Petitioner testified he maintained daily records of his gambling activity and argues on brief his record keeping is indicative of a trade or business. Petitioner did not provide respondent with these records, nor did he introduce the records into evidence. Given the lack of evidence, we do not find that petitioner maintained daily records of his gambling activity.

Petitioner argues that he spent "approximately 2,206.5 hours" gambling at various casinos, "where he focused primarily on slot machines such as the 'Double Diamond'", and that the amount of time devoted to his gambling activity is indicative of a trade or business. Petitioner relies on a schedule of gambling

wins and losses to establish the hours spent gambling.  The schedule of gambling wins and losses reflects petitioner's attempt to reconstruct the dates he gambled, the amount of money won or lost, and the amount of time spent gambling each day. However, the schedule was not provided to respondent until January 4, 2006, and there is no evidence in the record indicating when the schedule was prepared.  This evidence was not contemporaneously maintained, and it is inaccurate and unreliable.[7]  Petitioner did not provide his purported daily records, nor did he provide other evidence corroborating the amount of time he devoted to gambling during 2002.  Given the lack of reliable evidence, we cannot determine how much time petitioner devoted to gambling during 2002.

Unlike the taxpayer in Groetzinger, petitioner spent approximately 20 to 25 hours per week working for Caltex. Additionally, petitioner's livelihood did not depend on playing the slot machines.  His primary income came from his salary of $42,000 and the passthrough of income of $99,790 from Caltex, of which he was president and 100-percent owner during 2002.  By

---

[7]  For example, the schedule of gambling wins and losses indicates petitioner spent 18 days gambling during March 2002, during which he won $9,700 and lost $27,900.  However, the gambling summary prepared by petitioner for use in filing his 2002 return indicates petitioner gambled on only 2 days during March 2002, during which time he won $9,700 but lost $31,300. Additionally, the Forms W-2G issued to petitioner for payouts made during March 2002 indicate petitioner won only $8,100. Similar discrepancies appear in other months.

themselves, these facts do not preclude petitioner from being engaged in the trade or business of gambling. However, such factors were considered by the Supreme Court in <u>Groetzinger</u> and are relevant to our determination. See <u>Commissioner v. Groetzinger</u>, 480 U.S. at 24-25, 35-36. We find that these facts weigh against petitioner's being engaged in the trade or business of gambling. See <u>Jones v. Commissioner</u>, T.C. Memo. 1988-393.

Taking into consideration all of the above, we find petitioner was not engaged in the trade or business of gambling in 2002. Therefore, petitioner is not entitled to report his gambling activity on Schedule C. Instead, petitioner must claim his gambling losses as an itemized deduction on Schedule A, as determined by respondent. We sustain respondent's determination that the amount of tax required to be shown on petitioner's 2002 Federal income tax return was $40,399, resulting in a deficiency of $17,096.

## II. Accuracy-Related Penalty Under Section 6662(a)

Respondent determined petitioner is liable for an accuracy-related penalty under section 6662(a) for 2002 of $3,419. Petitioner argues he is not liable for an accuracy-related penalty because he reasonably relied upon the advice of his accountant.

Section 6662(a) imposes a penalty in the amount of 20 percent of the portion of the underpayment to which section 6662

applies. As relevant to this case, the penalty applies to any portion of the underpayment that is attributable to any substantial understatement of income tax. Sec. 6662(b)(2). There is a "substantial understatement of income tax" if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1).

The Commissioner bears the burden of production with respect to penalties. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the burden of production is met, the taxpayer must come forward with evidence sufficient to show that the penalty does not apply. Higbee v. Commissioner, supra at 447.

The tax required to be shown on petitioner's tax return was $40,399. Ten percent of that amount is less than $5,000. Thus, petitioner's understatement is substantial if it exceeds $5,000. Petitioner reported an income tax liability of $23,303, resulting in an understatement of $17,096. Respondent has satisfied his burden of production by showing that petitioner's understatement of tax was substantial.

The accuracy-related penalty is not imposed, however, with respect to any portion of the understatement if the taxpayer can establish he acted with reasonable cause and in good faith. Sec. 6664(c)(1). Reliance upon the advice of a professional may

demonstrate a taxpayer acted with reasonable cause and in good faith. Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 98-99 (2000), affd. 299 F.2d 221 (3d Cir. 2002); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991); see sec. 1.6664-4(c)(1), Income Tax Regs. However, a taxpayer's reliance upon the advice of a professional does not automatically constitute reasonable cause. Neonatology Associates v. Commissioner, supra at 98-99; see sec. 1.6664-4(c)(1), Income Tax Regs. For a taxpayer to reasonably rely on the advice of a professional, the taxpayer must show: (1) The adviser was a competent professional who had sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Associates v. Commissioner, supra at 98-99.

Petitioner testified he relied on his accountant, Mr. Beauregard, to prepare his return, and Mr. Beauregard had prepared his returns since 1993 without incident. However, petitioner did not call Mr. Beauregard as a witness, nor did he introduce evidence which would establish that Mr. Beauregard possessed the requisite expertise.[8] Because petitioner has not

---

[8] Petitioner did not begin his gambling activity until 2002, and his underpayment of tax arose from claimed deductions

(continued...)

established that Mr. Beauregard was a competent professional who had sufficient expertise to justify reliance, petitioner has not shown that he acted with reasonable cause and in good faith. See sec. 6664(c)(1); Neonatology Associates v. Commissioner, supra at 98-99. Therefore, we find petitioner is liable for an accuracy-related penalty under section 6662(a) of $3,419.

III. Conclusion

Petitioner was not engaged in the trade or business of gambling in 2002. For all of the foregoing reasons, we hold petitioner is liable for a deficiency in his 2002 Federal income tax of $17,096 and an accuracy-related penalty under section 6662(a) of $3,419.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.

---

[8](...continued)
for that activity. Mr. Beauregard's preparation of petitioner's returns for 1993-2001 does not establish that Mr. Beauregard had sufficient expertise regarding the tax treatment of petitioner's gambling activity. In fact, despite the clear requirement of sec. 165(d) that gambling losses may be claimed only to the extent of gambling winnings, petitioner claimed gambling losses that exceeded his gambling winnings by $50,650. In addition, the gambling losses were claimed as costs of goods sold. At the least, this calls into question Mr. Beauregard's expertise.