T.C. Summary Opinion 2007-194

UNITED STATES TAX COURT

LINDA M. MYERS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23664-05S.              Filed November 19, 2007.


Kathryn J. Sedo and Christine Rittberg, for petitioner.

Lisa R. Woods, for respondent.


KROUPA, Judge:  This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

---

[1]All section references are to the Internal Revenue Code in effect for the year at issue, unless otherwise indicated.

Respondent determined a $5,266 deficiency in petitioner's Federal income tax for 2003 and determined that petitioner was liable for a $1,055 accuracy-related penalty under section 6662(a). After concessions,[2] the sole issue for decision is whether petitioner was in the trade or business of gambling in 2003. We hold that she was.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference. Petitioner resided in South Saint Paul, Minnesota, at the time she filed the petition.

## Petitioner's Activities

Petitioner spent nearly all of her time during 2003 pursuing two activities, a trucking business that she owned and operated, and her gambling activity. She spent 25 to 35 hours per week working at the trucking business and about 40 hours per week on the gambling activity.

Petitioner oversaw the management and operations functions of her trucking business, which employed eleven drivers for eight trucks in 2003. She worked diligently to maintain the documentation required to run a successful trucking business, such as licenses, maintenance logs, and insurance matters. Petitioner retained an accountant to assist her with financial

---

[2]Respondent concedes that petitioner is not liable for the accuracy-related penalty under sec. 6662(a).

recordkeeping. Petitioner received a $28,000 salary and $36,000 nonemployee compensation from the trucking business in 2003.

Petitioner's gambling activity consumed the rest of her time. In fact, a typical day for petitioner involved working at the trucking business until 1 or 2 p.m., followed by a trip to the casino that typically lasted until 2 a.m. to 6 a.m. Petitioner would then return home and sleep for a little while before arising the next day to follow the same routine. Petitioner's children, who had lost their father in an automobile accident, were extremely worried about petitioner's early morning drives home from the casino, particularly in the wintertime. Nevertheless, petitioner gambled and made these late night trips home nearly every day.

Petitioner originally began gambling in 1992 after her husband's death, focusing on the $1 slot machines. When she first began gambling, petitioner would occasionally talk with other gamblers. Petitioner became increasingly serious about her gambling pursuits as time progressed and as she became accustomed to the casinos and learned more about their operations. She considered herself a professional gambler by 2000. Petitioner viewed herself as a gambling expert but found no pleasure in gambling. Instead, she considered gambling stressful, tiring, and time consuming. She did not go to the casino with friends or companions and was focused on doing everything she could to win while she was there.

Petitioner developed certain strategies she felt would maximize her odds of winning. Petitioner's primary strategy was essentially to locate and play those slot machines that were due to make a payout. Petitioner strategized that the more money put into a machine without a payout increased the odds of a payout. Petitioner would speak with the casino attendants upon arriving at the casino to determine which slot machines to play. The attendants would describe what had happened so far that day, which slot machines were played most heavily but had made no payouts, and which slot machines had made payouts. The attendants knew this information because they made the payouts by hand to gamblers who won over a certain amount. Petitioner also sometimes watched other gamblers playing slot machines to learn the slot machines' patterns. After learning this information, petitioner identified those slot machines petitioner considered "ripe" for a payout and played them.

Petitioner gambled about $500 in each of five slot machines that she felt were good candidates to make payouts on a typical day at the casino. Petitioner would carefully watch the results of each machine once she began using it. If the slot machine began giving her free plays, doubles, or triples, she viewed that as a very good sign and an indication that the slot machine was about to make a large payout. These results validated petitioner's choice of slot machine and convinced petitioner to continue playing that machine. Petitioner also strategized from

her experience that a slot machine would stay "hot" for a few weeks once it started paying.

Documentation of the Gambling Activity

The casinos gave petitioner Forms W-2G, Certain Gambling Winnings, when she won $1,200 or more on the slot machines. The casinos also provided petitioner a player card that she could insert into the slot machines to track her activities. The player card, when inserted into the machine, would record the amounts petitioner gambled and the amounts she won. Each year, the casinos would process the player card information to generate an annual profit and loss statement for petitioner. While petitioner used her player card most of the time, she did not use it every single time. The profit and loss statements were thus not a complete reflection of petitioner's gambling activities because they lacked any gambling petitioner did without the player card.

Petitioner was not interested in the non-recordkeeping benefits the player card offered, such as free lodging and meals. She only wanted it to track her profits. In fact, petitioner was disappointed when the casino offered her a free trip to Las Vegas because she thought she must have been losing too much money at her gambling activity for the casino to offer her such a trip and an opportunity to lose more.

Petitioner did not find it necessary to keep her own written set of separate gambling records. She knew in her head how much she had won or lost each day. In addition, the casinos

documented her activities through the player card system. Petitioner did retain bank statements, canceled checks, credit card statements, the Forms W-2G, and the profit and loss statement, which documented the gambling activities. Petitioner did not make a budget for the gambling activity but generally knew how much she entered the casino with each time.

## Success of Petitioner's Gambling Activity

Petitioner did not report an overall profit from her gambling activities in the 3 years before and the year after the year at issue. She has won large jackpots several times, however, including $50,000 twice. She won jackpots of $1,200 or more over 300 times during 2003. Petitioner also has taken home as much as $45,000 profit from 1 day's gambling.

Despite the occasional large jackpots, petitioner was concerned that she continued to lose money. She changed her strategy accordingly. Petitioner tried to focus on winning a little bit at a time rather than try to earn back large losses in one night. For example, if petitioner won money early in the afternoon, petitioner would go home rather than stay at the casino and play more to try to recoup old losses.

## Petitioner's Returns

Petitioner has treated herself as a professional gambler on her income tax returns since at least 2000. Petitioner used the same accountant that helped with the trucking business to assist her with matters related to the gambling activity and to prepare her individual returns.

Petitioner filed her return for 2003 reporting that she was in the trade or business of gambling. She deducted her gambling losses as an expense to the extent of her gambling winnings, totaling $1,408,740 in 2003. Respondent examined petitioner's return for 2003 and issued a deficiency notice. Petitioner timely filed a petition.

### Discussion

The sole issue for decision is whether petitioner was in the trade or business of gambling in 2003. If petitioner was in the trade or business of gambling, she may deduct her wagering losses to the extent allowable in computing adjusted gross income.[3] See sec. 62. If petitioner was not in the trade or business of gambling, on the other hand, she may only deduct the wagering losses to the extent allowable as an itemized deduction to compute taxable income. See Calvao v. Commissioner, T.C. Memo. 2007-57.

All ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business are generally deductible. Sec. 162(a). An activity must be conducted with continuity, regularity, and the primary purpose of earning a profit to be considered a trade or business under section 162. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). Whether the

---

[3]While sec. 165(a) generally permits the deduction of losses from gross income, there is a special rule limiting the deduction of gambling losses. Losses from wagering transactions may only be deducted to the extent of gains from wagering transactions. Sec. 165(d).

taxpayer is carrying on a trade or business depends on the facts and circumstances.[4]  Id. at 36.

Respondent has conceded that petitioner's gambling activity was conducted with the required continuity and regularity during 2003.  The parties dispute, however, whether petitioner's primary purpose for engaging in the activity was to earn a profit.  See id.; Miller v. Commissioner, T.C. Memo. 1998-463, affd. without published opinion 208 F.3d 214 (6th Cir. 2000).

We examine whether the taxpayer engaged in the activity with the actual and honest objective of making a profit.  See Evans v. Commissioner, 908 F.2d 369, 373 (8th Cir. 1990), revg. T.C. Memo. 1988-468; Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. While a taxpayer's expectation of profit need not be reasonable, there must be a good faith objective of making a profit.  Allen v. Commissioner, 72 T.C. 28, 33 (1979); sec. 1.183-2(a), Income Tax Regs.  We give greater weight to objective facts than to a taxpayer's statements of intent.  Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs.

---

[4]At trial, we denied petitioner's motion to shift the burden of proof under sec. 7491 because the outcome of this case is determined on the preponderance of the evidence, making it unnecessary to determine who has the burden of proof.  See Topping v. Commissioner, T.C. Memo. 2007-92.  The Court invited the parties to address this issue on brief.  We have carefully reviewed the parties' arguments on brief and stand by our ruling denying petitioner's motion to shift the burden of proof to respondent.  Instead, we shall determine the outcome of this case on the preponderance of the evidence.  See id.

We structure our analysis around nine nonexclusive factors. Sec. 1.183-2(b), Income Tax Regs. The nine factors are: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his or her advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. Id.

No factor or set of factors is controlling, nor is the existence of a majority of factors favoring or disfavoring a profit objective necessarily controlling. Hendricks v. Commissioner, 32 F.3d 94, 98 (4th Cir. 1994), affg. T.C. Memo. 1993-396; Brannen v. Commissioner, 722 F.2d 695, 704 (11th Cir. 1984), affg. 78 T.C. 471 (1982); sec. 1.183-2(b), Income Tax Regs. The individual facts and circumstances of each case are the primary test. Keanini v. Commissioner, supra at 46; Allen v. Commissioner, supra at 34; sec. 1.183-2(b), Income Tax Regs.

We now examine each of the nine nonexclusive factors.

Manner in Which the Taxpayer Carried On the Activity

We begin by examining the manner in which petitioner carried on her gambling activity. The fact that a taxpayer carries on the activity in a businesslike manner may indicate a profit

objective.  Sec. 1.183-2(b)(1), Income Tax Regs.  In determining whether a taxpayer conducted an activity in a businesslike manner, we consider whether the taxpayer maintained complete and accurate books and records, whether the taxpayer conducted the activity in a manner substantially similar to those of comparable businesses that are profitable, and whether the taxpayer attempted changes in an effort to earn a profit.  Engdahl v. Commissioner, 72 T.C. 659, 666-667 (1979); sec. 1.183-2(b)(1), Income Tax Regs.

The casinos maintained profit and loss tallies for petitioner through the player card system.  Petitioner thus did not find it necessary to keep separate books and records to track this information.  She used her player card most of the time to enable the casino to perform this tracking function.  Petitioner also did not keep a separate bank account for her gambling activities but kept a tally of the amount she had with her when she went to the casino.  See Canale v. Commissioner, T.C. Memo. 1989-619; cf. Calvao v. Commissioner, T.C. Memo. 2007-57 (taxpayer claimed he kept daily records of gambling activity but failed to offer any records into evidence).

Petitioner also had no written budget or business plan, although she had a strategy she felt would enable her to win.  She explained her strategy in detail to the Court.  Petitioner's strategy was to identify and play slot machines that were due for a payout.  She implemented the strategy by carefully gathering information about the playing history of the slot machines in the

casino and studying their patterns to determine which slot machines were likely to pay out.  Moreover, petitioner testified that after some initial losses she changed her strategy to help her win.  She decided to try to win just a little at a time rather than to try to recoup old losses all at once.  See Engdahl v. Commissioner, supra at 669.  If petitioner won some money early in the day, she would take the winnings and return home, rather than continue to gamble with the money she had just won and risk losing it.  We find that this factor favors petitioner.

Expertise of Taxpayer or His or Her Advisers

We next consider petitioner's expertise (or the expertise of her advisers) in the gambling activity.  Preparing for the activity by extensive study of its accepted business, economic, and scientific practices, and consulting with experts in these matters may indicate that a taxpayer has a profit objective when the taxpayer follows that advice.  Sec. 1.183-2(b)(2), Income Tax Regs.

Petitioner considers herself a gambling expert and has gambled for over 10 years.  The continuity and regularity of her gambling activity strongly suggest that she is an expert at slot machines.  Petitioner also consulted regularly with casino employees to further her gambling strategy and watched other gamblers to understand what she believed to be slot machine payout patterns.  We find that this factor favors petitioner.

## Time and Effort Expended by the Taxpayer in Carrying On the Activity

We next consider the time and effort petitioner expended in carrying on the gambling activity. A taxpayer's devotion of much time and effort to conducting an activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate an intention to derive a profit. Sec. 1.183-2(b)(3), Income Tax Regs.

Petitioner spent at least 40 hours per week gambling at the casinos. Petitioner would often gamble for 12 to 15 hours at a time, often as late as 2 a.m. to 6 a.m. We acknowledge that gambling activities are often viewed as recreational, enjoyable pursuits upon which many people enjoy spending significant time. See, e.g., Calvao v. Commissioner, T.C. Memo. 2007-57. Petitioner testified credibly, however, that she did not view gambling as a mere recreational pursuit. She credibly testified that she found no pleasure in gambling. Moreover, petitioner did not go to the casino with others and while there, was focused on winning as much money as possible. We find that this factor favors petitioner.

## Expectation That the Assets Used in the Activity May Appreciate in Value

Another factor to be considered is the expectation that the assets used in the activity may appreciate in value. Sec. 1.183-2(b)(4), Income Tax Regs. The parties agree that this factor does not apply.

Success of the Taxpayer in Carrying On Other Similar or
Dissimilar Activities

We next examine petitioner's success in carrying on other
similar or dissimilar activities. If a taxpayer has previously
engaged in similar activities and made them profitable, this
success may show that the taxpayer has a profit objective, even
though the current activity is presently unprofitable. Sec.
1.183-2(b)(5), Income Tax Regs. A taxpayer's success in other,
unrelated activities also may indicate a profit objective.
Daugherty v. Commissioner, T.C. Memo. 1983-188. A taxpayer's
success in a different business enterprise may be evidence of a
profit objective where the taxpayer relied on diligence,
initiative, foresight, and other qualities that generally lead to
success in business activities. Id.

Petitioner has shown that she was capable of running a
successful business through her ownership and operation of the
trucking business. Petitioner's success with the trucking
business indicates that she had the skills to operate a business
successfully. She relied on the same accountant for her gambling
activities and relied on her player card to track her winnings.
We find this factor favors petitioner.

Taxpayer's History of Income or Loss With Respect to the Activity

We next examine petitioner's history of income or loss with
respect to the gambling activity. A history of substantial
losses may indicate that the taxpayer did not conduct the
activity for profit. Golanty v. Commissioner, 72 T.C. 411, 427
(1979), affd. without published opinion 647 F.2d 170 (9th Cir.

1981); sec. 1.183-2(b)(6), Income Tax Regs.  Losses during the initial or startup stage of an activity do not necessarily indicate, however, that the taxpayer did not conduct the activity for profit, but losses that continue to be sustained beyond the period that is customarily necessary to bring the operation to profitable status may indicate the taxpayer did not engage in the activity for profit.  Engdahl v. Commissioner, 72 T.C. at 668; sec. 1.183-2(b)(6), Income Tax Regs.  Abandoning an activity after indications that the activity will be unprofitable signifies that the taxpayer engaged in the activity for profit. Canale v. Commissioner, T.C. Memo. 1989-619.

Petitioner has not shown a profit from her gambling activity for the 3 years before and the year after the year at issue. Petitioner persisted in the activity despite the ongoing pattern of losses, although she did change her strategy to some extent. This factor favors respondent.

Amount of Occasional Profits, If Any, Which Are Earned

We next consider the amounts of occasional profits, if any, that petitioner earned.  Occasional profits the taxpayer earned from the activity, in relation to the amount of losses incurred, the amount of the taxpayer's investment, and the value of the assets used in the activity provide useful criteria in determining the taxpayer's intent.  Sec. 1.183-2(b)(7), Income Tax Regs.  A practical possibility that a taxpayer could earn enough money in a year to exceed expenses also can indicate a

profit objective. <u>Bolt v. Commissioner</u>, 50 T.C. 1007, 1014-1015 (1968).

Petitioner has occasionally won jackpots as large as $50,000 from her gambling activity. Petitioner won sums of $1,200 or more over 300 times in 2003. Her frequent wins and occasional big wins indicate the possibility that petitioner could have earned enough to cover her expenses in a year. This factor favors petitioner.

Financial Status of the Taxpayer

We next examine petitioner's financial status. If a taxpayer does not have substantial income or capital from sources other than the activity in question, it may indicate that the taxpayer engages in the activity for profit. Sec. 1.183-2(b)(8), Income Tax Regs. Conversely, substantial income from sources other than the activity, especially if the losses generate large tax benefits, may indicate that the taxpayer is not conducting the activity for profit. <u>Id.</u> Those with substantial income from other sources have a much greater tax incentive to incur large expenditures in a hobby type of business. <u>Jackson v. Commissioner</u>, 59 T.C. 312, 317 (1972).

Petitioner earned $64,000 from the trucking business in 2003. Merely because petitioner had another source of income in 2003 is not dispositive, however. See <u>Calvao v. Commissioner</u>, <u>supra</u>. None of petitioner's income from the trucking business could be offset by gambling losses due to the limitation on deducting gambling losses only to the extent of winnings. See

sec. 165(d).  Petitioner thus had no tax incentive to engage in the gambling activity to shield income from other endeavors.  We conclude that this factor is neutral.

Whether Elements of Personal Pleasure or Recreation Are Involved

We next examine whether elements of personal pleasure or recreation were involved in the gambling activity.  The presence of recreational or pleasurable motives in conducting an activity may indicate that the taxpayer is not conducting the activity for profit.  Sec. 1.183-2(b)(9), Income Tax Regs.; see Calvao v. Commissioner, T.C. Memo. 2007-57 (taxpayer's gambling strategy and desire to win found consistent with gambling for entertainment or recreational purposes).  That the taxpayer derives personal pleasure from engaging in the activity is insufficient to cause the activity to be classified as not engaged in for profit if other factors show that the activity is conducted for profit.  Jackson v. Commissioner, supra; sec. 1.183-2(b)(9), Income Tax Regs.

We acknowledge that gambling at a casino is an activity commonly understood to be a pleasant amusement.  Petitioner testified credibly, however, that she found no pleasure in gambling.  It was work.  Petitioner testified that she found gambling to be stressful, tiring, and time consuming.  She further testified that she always went to the casino alone and that no friends or family members accompanied her to add any entertainment element to her activities.  We find her testimony

thoughtful and credible.  On balance, we find this factor favors petitioner.

Conclusion

Taking into account the above factors and considering the facts and circumstances relating to petitioner's gambling activity, we conclude that petitioner engaged in the gambling activity with the actual and honest objective of making a profit in 2003.  As the parties have agreed that petitioner conducted the gambling activity with continuity and regularity, we conclude that petitioner was in the trade or business of gambling during 2003.  Accordingly, petitioner may deduct her gambling expenses under section 162(a) to the extent allowable under section 165(d).

To reflect the foregoing,

Decision will be entered for petitioner.