T.C. Summary Opinion 2008-124


UNITED STATES TAX COURT


CHARLES R. OLIVER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16034-06S.                 Filed September 18, 2008.


Charles R. Oliver, pro se.

<u>Beth A. Nunnink</u>, for respondent.


WELLS, <u>Judge</u>:  The instant case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.[1]  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court,

------

[1]All subsequent section references are to the Internal
Revenue Code, as in effect for 2002 and 2003, the years in issue.

and this opinion shall not be treated as precedent for any other case.

The issues we must decide are: (1) Whether petitioner is entitled to business expense deductions and costs of goods sold greater than those respondent allowed for 2002 and 2003; (2) whether petitioner had gambling winnings of $3,097 and $1,250 in 2002 and 2003, respectively, and whether petitioner is entitled to deduct gambling losses; and (3) whether petitioner is liable for penalties under section 6662 for 2002 and 2003.

## Background

Some of the facts and certain exhibits have been stipulated. The parties' stipulations of fact are incorporated in this Summary Opinion by reference and are found as facts in the instant case.

At the time of filing the petition, petitioner resided in Tennessee.

During 2002 and 2003 petitioner engaged in a painting business named R & B Paint & Repair Co., using subcontractors, the income and expenses of which he reported on Schedules C, Profit or Loss From Business, attached to his returns for those years. Petitioner maintained no receipts, contracts, invoices, Forms 1099, or Forms W-2, Wage and Tax Statement, with respect to the income and expenses reported on his Schedules C. The only

documentation petitioner maintained was his checking account records.

During 2002 and 2003 petitioner gambled at Fitzgerald's Casino. During 2002 petitioner had gambling winnings of $3,097. During 2003 petitioner had gambling winnings of $1,250. In both 2002 and 2003 petitioner's gambling losses met or exceeded his gambling winnings. On each of his returns for 2002 and 2003 petitioner omitted his gambling winnings from gross income and claimed the standard deduction.

## Discussion

### Schedule C Expenses

In general, deductions are a matter of legislative grace and the burden of showing the right to claimed deductions is on the taxpayer. Welch v. Helvering, 290 U.S. 111 (1933).

Section 162(a) allows the deduction of "ordinary and necessary expenses" incurred while carrying on a trade or business. Section 6001 requires a taxpayer to maintain adequate books of account or records that are sufficient to establish the amount of gross income, deductions, or other matters required to be shown on his tax return.

If a taxpayer establishes that a deductible expense has been paid but is unable to substantiate the precise amount, the Court may estimate the amount of the deductible expense, bearing heavily against the taxpayer whose inexactitude in substantiating

the amount of the expense is of his own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). An estimate is possible, however, only if the taxpayer presents evidence sufficient to provide some basis upon which an estimate can be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

In general, no deduction is allowed for personal, living, or family expenses. Sec. 262. In Richards v. Commissioner, T.C. Memo. 1999-163, the Court stated that television sets are "inherently personal items under section 262." The Court has also held that the expense incurred in repairing a television is inherently personal. O'Connor v. Commissioner, T.C. Memo. 1986-444. Additionally, costs of daily newspapers in general circulation, which contain a significant amount of information that is inherently personal, are nondeductible personal expenses. Richards v. Commissioner, supra.

Car and truck expenses are subject to the strict substantiation requirement found in section 274(d) and section 280F(d)(4)(A)(i) and (ii). The taxpayer must provide documents that corroborate by adequate records or by sufficient evidence the amount of the expense, the mileage for each business use of the vehicle and the total mileage for all use of the vehicle during the taxable period, the date of the business use, and the business purpose for the use. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). The

taxpayer must substantiate each element of an expenditure or use by adequate records or by sufficient evidence corroborating his own statement. Sec. 1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). During 2002 the standard mileage rate was $0.365. Rev. Proc. 2001-54, 2001-2 C.B. 530. During 2003 the standard mileage rate was $0.36. Rev. Proc. 2002-61, 2002-2 C.B. 616.

On his Schedules C petitioner deducted expenses for "DirecTV" (cable television) and listed the cable television access as "weather info service" on the theory that the cable television included weather information. Petitioner claims that the purpose of having cable television was to watch the Weather Channel. However, petitioner admitted that he had basic cable television which gave him access to 40 to 50 stations. Basic cable television, similar to daily newspapers, contains a significant amount of information which is inherently personal. As with the purchase of a television or television repair, petitioner's cable television access is not deductible as petitioner has failed to prove that his use of the cable television access was not primarily personal. Accordingly, we hold that petitioner is not entitled to deduct the claimed "Other expenses" for cable television.

For 2002 petitioner claimed cost of goods sold of $51,531. Petitioner included cost of labor of $18,484, materials and

supplies of $31,414, and other costs of $1,633. According to petitioner's check analysis, petitioner had materials and supplies expenses of $11,650 and subcontractor expenses of $18,509.89. Many of petitioner's checks for materials and supplies expenses are made out to "cash". He provided no receipts to show that the cash was actually used for materials and supplies.

Additionally, some of the checks were payable to places that do not appear to be related to petitioner's business, such as a grocery store. Petitioner made credit card payments to Wachovia, Home Depot, Cabelas, Exxon, Lowes, Texaco, Union76, Citi, Discover, NAEC, Lasalle Bank, Sams, and Conseco Finance totaling $16,572.21. Petitioner offered no receipts, invoices, or statements that show the items purchased with the credit cards. Accordingly, the record does not show which, if any, business expenses were paid with the credit cards. Because petitioner failed to offer any receipts or invoices, we cannot estimate which if any of such items should be included in petitioner's cost of goods sold.

Petitioner provided no Forms W-2 or Forms 1099 issued to his subcontractors to support his claimed cost of labor. Petitioner's own check analysis indicates materials and supply costs of $11,650 and subcontractor expenses of $18,510 for total cost of goods sold of $30,160. In the notice of deficiency

respondent allowed cost of goods sold of $35,251. Accordingly, even if we were to accept all the checks petitioner issued for "materials and supplies" and "subs" as petitioner's expenses, respondent already has allowed cost of goods sold greater than the amount shown in petitioner's analysis. On the basis of the foregoing, we hold that petitioner is not entitled to additional cost of goods sold for 2002.

For 2003 petitioner claimed cost of goods sold of $117,195. Petitioner included cost of labor of $39,055 and materials and supplies of $78,140. According to petitioner's "Client's Recap of Books", petitioner had subcontractor expenses of $48,070.42 and materials and supplies expenses of $69,125.53. On the basis of petitioner's memos on his checks, the checks are broken down into materials, subs, and credit card payments. Petitioner did not offer any Forms W-2 or Forms 1099 for his subcontractor expenses. Even if we were to accept all the checks to petitioner's subcontractors, the checks marked materials (usually made out to "cash"), and the checks to Porter Paints and Sherwin Williams as petitioner's expenses, they would total only $76,058, and respondent already has allowed cost of goods sold of $93,719.

Additionally, petitioner offered checks made out to "cash" which listed "materials" on the memo line. However, he provided no receipts to show that the cash was actually used for materials and supplies. Because petitioner did not offer any receipts or

invoices regarding his materials and supplies, it is unclear whether any items were returned for cash or credit. Some of the checks in the record are for purposes unrelated to petitioner's business, for example, check No. 1958 for boat registration and check No. 1956 for a birthday present to Casey Oliver. Accordingly, we are unable to conclude that petitioner used his checking account exclusively for business. Petitioner made credit card payments to Wachovia, Home Depot, Cabelas, Exxon, Lowes, Providian, and Bank One. To the extent petitioner is claiming that some or all of those credit card payments are deductible, there are no receipts, invoices, or statements in the record that show what was purchased with those credit cards. Because petitioner failed to offer any receipts or invoices, we cannot determine which if any of such claimed expenses were paid with the credit cards and should be included in petitioner's cost of goods sold. We hold that petitioner has failed to show that he had cost of goods sold greater than the amount respondent allowed for 2003.

For 2002 petitioner deducted rent expenses of $2,400. Petitioner stated that he agreed to pay his companion $100 a week for rent and utilities. However, petitioner admitted that his companion would not make him pay and he was allowed to pay only when he was able to. Petitioner offered no rental agreement and no documents that would show he paid a consistent amount to his

companion. Moreover, petitioner did not offer any credible evidence that shows the payments were actually for business rent. For the checks made out to petitioner's companion on which the memo line was completed, none of the checks indicated the payments were for rent. Only two checks written to petitioner's companion contained memos: (1) Petitioner's companion wrote check No. 1416 to herself and wrote in the memo line "Reimbursement for all payments" and (2) petitioner wrote check No. 1471 and wrote in the memo line "loan payment." Respondent suggests that petitioner's payments to his companion appear to be either his share of living expenses or repayment of a loan. Additionally, petitioner did not provide any evidence that his payments were actually business expenses. Indeed, petitioner's companion appears to have had check writing authority on petitioner's checking account. Furthermore, three of the checks to petitioner's companion were written by petitioner's companion. Petitioner's checking account was not used only for business expenses. For example, petitioner wrote checks to Fitzgerald's Casino for gambling and had debit card transactions on the account for Leslie's Pool Supply, Carl's Wine and Liquor, and Travis Boating Center. On the basis of the foregoing, we find that petitioner has not established that he paid any rent and hold that he is not entitled to deduct his claimed rent expenses.

For 2002 petitioner deducted utility expenses of $817. Petitioner testified that he agreed to pay his companion $100 a week for rent and utilities. However, as stated above, petitioner was not required to make such payments and would pay only when he was able. Furthermore, none of the checks to petitioner's companion indicate that they are for rent or utilities. We are unable to conclude that petitioner's payments to his companion were for rent or utilities used in his business.

Petitioner contends that he deducted utility expenses related to water use, electricity to charge tools and to heat work trailers, and trash pickup. In petitioner's checking account analysis, he included in utilities items from Salesville Water, Bartlett Water, MLGW (Memphis Light, Gas, & Water), Southern Disposal, and the City of Bartlett. However, petitioner offered no evidence as to what portion of those expenses was personal and what portion, if any, was for business. Water, trash pickup, gas, and electricity are all expenses that generally are for personal use in a residence. Accordingly, we have no basis for concluding that the claimed utility expense deductions were business related. Consequently, we hold that petitioner is not entitled to his claimed utility expense deductions.

Petitioner claimed mileage of 21,263 miles and 20,247 miles for 2002 and 2003, respectively. For 2002 petitioner provided a

document labeled "Key Figures" dated January 16, 2006, which shows business mileage of 21,263. For 2003 petitioner provided a document labeled "Client's Recap of Books" that shows mileage of 21,313 and business use of 95 percent. However, petitioner admitted that his Client's Recap of Books would have been created in 2004 for his 2003 taxes. Petitioner offered no contemporaneous records, mileage logs, or calendars in regard to his claimed mileage. Petitioner offered no records or evidence which substantiated his testimony. The only evidence petitioner offered was evidence he created after the years in issue, and it is in the nature of statements or testimony rather than actual substantiation of his testimony.

Petitioner prepared and had three of his subcontractors sign letters stating "he did not use his work truck except to work out of." The letters are identical and appear to be petitioner's statements and not the subcontractors' statements. Furthermore, there are no addresses, phone numbers, or Social Security numbers to enable corroboration of the subcontractors' statements. Moreover, the subcontractors could not have had such extensive knowledge unless they were in petitioner's presence at all times during the years in issue. On the basis of the record, we conclude that petitioner has not established the business use of his vehicle and has not met the strict substantiation requirements for his car and truck expenses. Consequently, we

hold that petitioner is not entitled to deduct his claimed car and truck expenses.

## Gambling Winnings

Section 61 defines gross income as all income from whatever source derived. Section 165(a) provides the general rule that there shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 165(d) limits the loss deduction of section 165(a), providing: "Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions." Section 165 permits a deduction for gambling losses for a taxpayer who is not in the business of gambling, see Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987), only to the extent the taxpayer elects to itemize his deductions, sec. 63(a); see Calvao v. Commissioner, T.C. Memo. 2007-57; Heidelberg v. Commissioner, T.C. Memo. 1977-133.

During 2002 and 2003 petitioner gambled at Fitzgerald's Casino. During 2002 petitioner had gambling winnings of $3,097. During 2003 petitioner had gambling winnings of $1,250. In both 2002 and 2003 petitioner's gambling losses met or exceeded his gambling winnings. On each of his returns for 2002 and 2003 petitioner failed to include his gambling winnings in income and claimed the standard deduction. Although the gambling losses would be allowable as an itemized deduction up to the amount of

the winnings, since petitioner did not elect to itemize his deductions, he is not entitled to deduct the gambling losses.[2] Sec. 63(a) and (b); see Calvao v. Commissioner, supra; Heidelberg v. Commissioner, supra. Consequently, we hold that for each of the years in issue petitioner is required to include the gambling winnings in gross income and is not entitled to any deduction for losses.

Accuracy-Related Penalties Under Section 6662

Section 6662(a) and (b)(1) and (2) imposes a penalty for a taxpayer's underpayment which is attributable to negligence or disregard of rules or regulations or a substantial understatement of income tax. Negligence is any failure to make a reasonable attempt to comply with the provisions of Internal Revenue Code, and disregard is any careless, reckless, or intentional disregard. Sec. 6662(c). Negligence includes the failure of a taxpayer to keep proper records or to substantiate his reported expenses. Sec. 1.6662-3(b)(1), Income Tax Regs. A "substantial understatement" of income tax is $5,000 or 10 percent of the tax required to be shown on the return, whichever is greater. Sec. 6662(d)(1). Pursuant to section 7491(c), the Commissioner bears the burden of production with respect to the imposition of any penalty. Petitioner has deficiencies of $7,167 and $8,872 for

---

[2]A taxpayer may change his or her election pursuant to sec. 63(e)(3). However, the losses for both 2002 and 2003 would not be as advantageous to petitioner as the standard deduction for those years.

2002 and 2003, respectively.  Those amounts exceed both $5,000 and 10 percent of the tax required to be shown on those returns. Consequently, petitioner had substantial understatements of income tax and is liable for the penalties under section 6662(b)(2).

On the basis of the record, we sustain respondent's determinations.  We have considered all of the arguments of the parties, and, to the extent not addressed in this Summary Opinion, we conclude those issues are without merit, irrelevant, or unnecessary to reach.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.